Filed Nov. 27, 1883.

---

No. 11,250.

## MAY v. RICE, AUDITOR.

CONSTITUTIONAL LAW.—*Legislative Appropriations.*—The Constitution prohibits the drawing of money from the State except in pursuance of appropriations made by law.

SAME.—*Enactment of Laws.*—The Constitution requires that laws shall be enacted by bill, and that the style shall be, "Be it enacted by the General Assembly of the State of Indiana."

SAME.—*Auditor of State.*—*Joint Resolution.*—Money can not be appropriated by joint resolution, nor can the Auditor of State issue a warrant for money so appropriated.

From the Superior Court of Marion County.

*T. A. Hendricks*, for appellant.

*F. T. Hord*, Attorney General, for appellee.

ZOLLARS, J.—This is a proceeding by mandamus instituted by the appellant to compel James H. Rice, as Auditor of State, to issue to her a warrant upon the State Treasurer for $10,000. The judgment below was in favor of the auditor.   At the session of 1883 the General Assembly passed the following, denominated a joint resolution, viz. :

"A joint resolution, providing for the payment of a claim in favor of Mrs. Edwin May, and appropriating money therefor.

"*Be it Resolved by the General Assembly of the State of Indiana.*

"SECTION 1. There is hereby allowed Mrs. Sarah May, wife of the late Edwin May, for services of said Edwin May as architect in the construction of the State House, now in

process of erection, the sum of ten thousand ($10,000) dollars, and said amount is hereby appropriated out of any money in the treasury not otherwise appropriated.

" SEC. 2. The Auditor of State is hereby authorized to draw his warrant on the State Treasurer for said amount."

This resolution was signed by the presiding officer of each House, and at the proper time was presented to the Governor for his approval. The Governor did not approve and sign it, nor did he return it, with his objections, to the Legislature, but caused it to be filed in the office of the Secretary of State. It appears now among the published laws of the session. Acts 1883, p. 211.

In June, 1883, Mrs. May requested and demanded of the Auditor of State a warrant upon the treasury for the amount named in the resolution. The Auditor, believing that the resolution does not confer upon him the legal right to draw such warrant, declined to comply with the demand. Whether it does or not is the question for decision. The Constitution provides that the Auditor of State shall perform such duties as may be enjoined by law. Section 151, R. S. 1881.

Section 5639 of the statute provides, *inter alia*, as follows: " The Auditor of State shall, at no time, draw a warrant upon the Treasurer of State unless there be money in the treasury belonging to the fund upon which the same is drawn to pay the same, and in conformity to appropriations made by law, and on money actually in the treasury, subject to the payment of the same." Another section makes the Auditor criminally liable for drawing a warrant in violation of the above section. It is very clear, then, that the Auditor has no authority to draw such warrant unless there has been an appropriation made by law. The Constitution further provides as follows: "No money shall be drawn from the treasury but in pursuance of appropriations made by law." Section 195, R. S. 1881. And further, as follows: " The style of every law shall be: 'Be it enacted by the General Assembly of the State of Indiana'; and no law shall be enacted, except

by bill." Section 97, R. S. 1881. Does the so-called reso-
lution so meet these several requirements of the Constitution
as to make a valid appropriation of the $10,000? It has
neither the title nor style of a law, as required by the above
constitutional provisions. It was not, *eo nomine*, enacted as
a "bill." In name and form it purports to be a joint reso-
lution, and not a bill or "act" of the Legislature. It must
be treated as a resolution, and not as a bill. This suggests
three inquiries:

1st. Is it essential, to constitute a law, in the sense in which
that term is used in the Constitution, that the enactment shall
have been presented and passed as a bill?

2d. Is it essential, in the enactment of a law, that the
words prescribed for the enacting clause shall be used, or may
the words "Be it resolved" be substituted for "Be it enacted"?
Out of these enquiries springs the more general one:

3d. Is this resolution a law, in any sense, as that term is
used in these sections of the Constitution and statutes, in re-
lation to the appropriation of money and the drawing of
warrants upon the treasurer by the auditor of State?

One purpose of the framers of the Constitution, and of
the people in its adoption, we think, is patent, and that was
to guard the treasury against extravagant, unjust, and
hastily and carelessly allowed demands. It was the same
purpose as led the House of Commons to adopt the standing
order that, before a bill for the expenditure of public money
should be introduced, the subject-matter should be first con-
sidered in committee of the whole, and the bill be ordered
by that committee. Cushing's Law and Practice of Legisla-
tive Assemblies, section 2079. It was a kindred purpose to
this, which led to the practice in the English Parliament, that
all bills for the imposition of public burdens, by way of rais-
ing revenue, shall originate in the House of Commons, and
which led to the incorporation into the constitution of the
United States, and of most of the States, that such bills shall
originate in that branch of the Legislature nearest the peo-

ple. Cushing, section 2303; May Parliamentary Prac., pp. 437, 447; R. S. 1881, sections 7, 113.

Is a resolution a bill? Perhaps as accurate a definition of a bill as can be found is that given in Webster's Dictionary : "A form or draft of a law, presented to a Legislature, but not yet enacted, or before it is enacted; a proposed or projected law." " In some cases statutes are called bills; but usually they are qualified by some description; as, a bill of attainder." Bills and acts are sometimes used as synonymous terms. Cushing, section 2055. The definition of a bill as given by Webster is that usually accepted and acted upon, but, as we shall see, our Constitution extends it. The idea conveyed by the word *bill* is different from that conveyed by the word *resolution*. The distinction between a bill and resolution is clearly kept up in the Constitution of this State, as an examination of some of its provisions will show. We call attention to some of the sections of article 4: Bills may originate in either house, except revenue bills. Section 17. The vote on the passage of a bill, *or* joint resolution, shall be taken by yeas and nays. The bill must be read by sections on three different days, etc. Section 18. A joint resolution, of different sections, doubtless may be passed upon one reading. Every *act* shall embrace but one subject, and matters properly connected therewith, which subject shall be embraced in the title. Section 19. There is no such provision in relation to joint resolutions. No *act* shall ever be revised or amended by mere reference to its title. Section 21. This section has no reference to joint resolutions. No " act" shall take effect until the same shall have been published and circulated in the several counties of the State by authority, except in cases of emergency, etc. Section 28. This can have no reference to joint resolutions. They take effect as soon as passed. Bills and joint resolutions must be passed by a vote of a majority of the members of the Legislature, and, when so passed, shall be signed by the presiding officers of the respective houses. These requisites they have in common, but the distinction is

clearly kept up.    Section 25.    In section 14, of article 5, a
bill is recognized as still a bill, after its passage, and until it
has reached the Governor.    Every bill which has passed, etc.,
shall be presented to the Governor.    The Governor is required
to either sign the bill, or return it to the house in which it may
have originated, with his objections, etc.    If he sign the bill, it
becomes a law.    If he veto it, and it is not repassed by the
requisite vote, it does not become a law.    Nothing of the kind is
required in relation to a joint-resolution under our Constitu-
tion, as we understand and interpret that instrument.    Such
a resolution, if passed by the requisite vote, and signed by the
presiding officers, is in full force.    Nothing would be added
to its validity and force by the signature of the Governor, nor
has he any power to defeat it by a veto.    It does not go to
him for any purpose of approval or disapproval.    It appears
from the Constitutional Debates that a proposition to include
joint resolutions with bills in the above section, so that they
should be sent to the Governor, was voted down.    2 Debates
Const. Con., p. 1331.    This action of the convention is the
more significant when we recollect that the convention was
in a work of reform, adapting the new Constitution to the
increased wants and dangers of a rapidly increasing and pro-
gressive population, and that the Constitution of 1816, which
was being superseded, provided that joint resolutions as well
as bills, should be sent to the Governor for his approval or
disapproval, and to be treated by him and the Legislature as
bills if vetoed by him.    It is very apparent from this exam-
ination of the Constitution that the terms *bill* and *joint res-
olution*, as used therein, do not mean the same thing.    They
are widely different.    Their functions are altogether different.
Authority to act by joint resolution is given, affirmatively,
by the Constitution in but few instances.

By such resolution, the two houses may adjourn for more
than three days.    Article 4, section 10.    Certain officers may
be removed by such resolution.    Article 6, section 7.    Pos-
sibly, under section 17, of article 5, the powers granted to

grant pardons, etc., may be exercised by such resolution. Besides the authority thus expressly granted, a joint resolution doubtless may be the means of expressing the legislative will in reference to the discharge of an administrative duty if such expression falls short of the enactment of a law. The general and most common use of resolutions is in the adoption of rules and orders relative to the proceedings of the legislative body. Cushing, *supra*, section 779; May's Par. Prac., pp. 440, 447, 450. Our conclusion upon this branch of the case is, that a joint resolution under our Constitution is not a bill, and that laws for the appropriation of money for public purposes, or the payment of private claims, such as Mrs. May's, can not be enacted by joint resolution. This view is sustained by the cases of *Barry* v. *Viall*, 12 R. I. 18; *Reynolds* v. *Blue*, 47 Ala. 711; *Brown* v. *Fleischner*, 4 Oregon, 132; *Boyers* v. *Crane*, 1 W. Va. 176. In the case last cited the court says: "By article 4, section 1, Constitution of West Virginia, the legislative power is vested in the Senate and House of Delegates, and the style of their acts is required to be, ' Be it enacted,' etc. Now the joint resolution which forbids the auditor to pay the secretary the residue of his salary subsequent to July 1st, 1863, and which attempts to set off the amount so withheld, against the amount previously paid him, for the quarter preceding, is in conflict with all these provisions of the organic law and is therefore void."

Mr. Cushing says that "A form of legislation, which is in frequent use in this country, chiefly for administrative purposes of a local or temporary character, sometimes for private purposes only, is variously known, in our legislative assemblies, as a joint resolution, a resolution, or a resolve. This form of legislation is recognized in most of our constitutions, in which, and in the rules and orders of our legislative bodies, is put upon the same footing, and made subject to the same regulations, with bills properly so called. In Congress, a joint resolution, which is the name given in that body to this kind of legislation, is there regarded as a bill." Sec. 2403.

We are not prepared to gainsay this, but it does not serve as authority for such legislation under our Constitution. The Constitution of the United States requires that joint resolutions as well as bills shall be submitted to the President for his approval or disapproval.   Article 1, section 7.   It will be found that generally, if not universally, like provisions are contained in the Constitutions of the States, where such legislation has been sanctioned.

There is no inhibition against such legislation, that we have been able to find, in the Constitution of the United States. The same may be said of some of the States.

If, in the case in hearing, it shall be held that the money was appropriated by the resolution, it would follow, of course, that all similar appropriations may be so made, and that specific appropriation bills may be dispensed with; and if these, why not the general appropriation bills? and if this may be done, why may not the Legislature, by such resolution, repeal all of the laws making general and specific appropriations?   Why may it not, by such resolution, repeal the whole body of the laws now in force?   It would hardly do to grant all this.   We are aware that there is a distinction recognized between laws general in their operation and application, and laws which affect but a few; but this distinction can hardly be made applicable when the public money is to be appropriated.   At least, the distinction would be that between public and private bills.   If the resolution may take the place of or be treated as a private bill, there seems to be no good reason why it may not take the place of and be treated as a public bill.   Another anomaly would result from holding that the appropriation could be made by the resolution. For two claims of the same class, but due to different individuals, the Legislature might make two appropriations; to one by bill, to the other by joint resolution.   The resolution needs no further action, and the party in whose favor the appropriation is made draws his money.   The bill goes to the Governor, he declines to sign it, and returns it to the Legis-

lature with his objections. The objections appear satisfactory; the Legislature does not pass the bill over the veto, and the claimant named therein loses his claim. The section of the Constitution, as we have seen, requires that "The style of every law shall be: 'Be it enacted by the General Assembly of the State of Indiana.'" The Constitution of 1816 did not contain the provision, "and no law shall be enacted except by bill"; neither did it contain the word "every" in the section prescribing the enacting clause. It was as follows: "The style of the laws of this State shall be, 'Be it enacted by the General Assembly of the State of Indiana.'" Under the Constitution of 1816, the argument that the provision prescribing the style of the laws was directory, and not mandatory, might have some plausibility and force; and as it was not provided in that Constitution, that "no law shall be enacted except by bill," it might, with the same plausibility, be said that money might be appropriated by joint resolution. With the present Constitution there seems to be no room for construction. In the one instance, there is a positive inhibition, and in the other, the word "every" implies a negative, which amounts to an inhibition. It is a cardinal rule of construction that statutory provisions will not be held to be directory, when they embody a prohibition, by the use of negative words. Cooley Const. Lim. (5th ed.) p. 89; Sedgwick Stat. Law (2d ed.), p. 319. For illustrations of mandatory acts, see Sedgwick Stat. Law (2d. ed.), p. 316, n. Applying this rule of construction to the section of the Constitution under examination, it must be held to be mandatory.

It has been held by some of the ablest courts and law writers, that the rules which distinguish directory and mandatory statutes should rarely be so applied to Constitutions as to hold their provisions directory. Judge Cooley holds to this doctrine, and criticises, with much force, the cases holding the contrary, some of them cases cited by counsel for appellant. Cooley Const. Lim. (5th ed.) p. 93. That author says:

"But the courts tread upon very dangerous ground when

they venture to apply the rules which distinguish directory and mandatory statutes to the provisions of a Constitution. Constitutions do not usually undertake to prescribe mere rules of proceeding, except when such rules are looked upon as essential to the thing to be done; and they must then be regarded in the light of limitations upon the power to be exercised. * * * * * * * There are some cases, however, where the doctrine of directory statutes has been applied to constitutional provisions; but they are so plainly at variance with the weight of authority upon the precise points considered that we feel warranted in saying that the judicial decisions as they now stand do not sanction the application."

After referring to the cases, he says further: "These cases, and especially what is said by the California court, bring forcibly before our minds a fact, which can not be kept out of view in considering this subject, and which has a very important bearing upon the precise point which these decisions cover. The fact is this: that whatever constitutional provision can be looked upon as directory merely is very likely to be treated by the Legislature as if it was devoid even of moral obligation, and to be therefore habitually disregarded. To say that a provision is directory, seems, with many persons, to be equivalent to saying that it is not law at all. That this ought not to be so must be conceded; that it is so we have abundant reason and good authority for saying. If, therefore, a constitutional provision is to be enforced at all, it must be treated as mandatory. And if the Legislature habitually disregard it, it seems to us that there is all the more urgent necessity that the courts should enforce it. And it also seems to us that there are few evils which can be inflicted by a strict adherence to the law, so great as that which is done by the habitual disregard, by any department of the government, of a plain requirement of that instrument from which it derives its authority, and which ought, therefore, to be scrupulously observed and obeyed." Cooley, *supra,* p. 180.

May *v.* Rice, Auditor.

This court in a recent case said: "The Constitution says that 'the style of every law shall be, Be it enacted,' etc., and doubtless this clause should precede everything which is made and declared to be law." *Barton* v. *McWhinney*, 85 Ind. 481, 487. It would be extending this opinion to an undue length, to examine each case cited by counsel. We may, however, say of the case of *Swann* v. *Buck*, 40 Miss. 268, that it arose under a Constitution like that of 1816 in this State, and the decision was made to turn upon the fact that "There are no exclusive words in the Constitution negativing the use of any other language." Our Constitution does contain words of exclusion, and these words overthrow the above case, as authority here. In addition to this, Mississippi is one of the States in which resolutions, as well as bills, go to the Governor.

When the language of a Constitution is obscure, or there is doubt as to the scope or application of any provision, construction becomes necessary. In the interpretation of constitutions, as well as statutes, the object is to ascertain and carry out the purpose of the authors. In doing this, the words used in the instrument should be taken in their literal signification, unless, by giving them such signification, the meaning of the instrument is rendered doubtful, or it is made to lead to possible oppression or injustice, or to contradictions or absurd results. In this case, the language of the Constitution is so plain and emphatic, that we need not enquire for reasons in its adoption. In such a case, our duty is a plain one, to declare and uphold the Constitution. If we may hold the section under discussion to be directory, it seems to us, that to be consistent, we would be compelled to make a like ruling as to every other section of the Constitution.

In reaching the conclusion we have in this case, we have not been unmindful of the rule so forcibly urged by appellant's counsel, that very great respect should be had for the judgment of the Legislature, as a co-ordinate branch of the

government, in the passage of the resolution.    It is a rule
well settled, that the courts should not overthrow an enact-
ment as unconstitutional except in the clearest case, and that
all doubts should be solved in favor of the legislative action.
Nor have we been unmindful of the force that should be
given to legislative practice which may serve as a legislative
interpretation.    It is a fact, that, under the Constitution of
1816, money was, in several instances, appropriated by joint
resolutions for the payment of private claims.    Under the
present Constitution, like appropriations have been made,
but much less frequent.    If the sections under examination
were at all ambiguous, or doubtful in meaning, or if there
were serious difficulties in the way of literal interpretation
and practical application, such examples of legislative action
would be of very much more weight.    But, under a section
so plain and unambiguous, such examples by the Legislature
amount to nothing more than occasional violations and call for
judicial disapprobation, rather than serve as interpretations.

These appropriations have not been frequent.    The settled
course of the Legislature has been to make all such appro-
priations by specific appropriation bills, and especially since
the adoption of the new Constitution, which contains inhibi-
tions not in that of 1816.    In the shortness of the sessions,
and the mass of business that presses upon the members, it is
not to be wondered at that there are occasional oversights
and mistakes upon questions of constitutional law.    In what
we have said and decided in this case, we have not brought
ourselves in conflict with the case of *Willets* v. *Ridgway*, 9
Ind. 367, cited by counsel.

We need not notice the case of *State* v. *Bailey*, 16 Ind. 46,
further than to say that so far as it was necessary to decide,
and so far as anything was really decided, in that case, we do
not regard it as in conflict with the conclusion reached in this
case.    Our conclusion being that the resolution is not a law,
it results that the appropriation in favor of Mrs. May was
not legally made, the Auditor of State had no authority to

draw his warrant upon the treasurer therefor, and that the court below in so deciding decided correctly.

The judgment is therefore affirmed, with costs.

Filed Nov. 27, 1883.