Reed, J.,
after stating the facts, delivered the opinion of the court.
The questions of law raised by the demurrer are the only ones to be determined in this court.
This court enters with great reluctance upon the examination of grave constitutional questions, its conclusions not being final, the ultimate determination of them resting, very wisely and properly, in the supreme court. We regret the necessity, cast by law upon us, of an intermediate examination, experimentally. But litigants having a right to invoke *253 a judgment of this court, we acquiesce in the inevitable, feeling that perhaps the labor of the supreme court may be lessened by this.
Sec. 39, art. 5 of the State Constitution is as follows:
“ Every order, resolution or vote to which thé concurrence of both houses may be necessary, except of the question of adjournment, or relating solely to the transaction of business of the two houses, shall be presented to the governor, and before it shall take effect, be approved by him, or being disapproved, shall be repassed by two thirds of both houses according to the rules and limitations prescribed in cases of a bill.”
It will also be necessary in the discussion of the case to refer to sec. 32, art. 5, in regard to appropriations:
“ The general appropriation hill shall embrace nothing but appropriations for the ordinary expenses of the executive, legislative and judicial departments of the state, interest on the public debt, and for public schools. All other appropriations shall be made by separate bills, each embracing but one subject.” .
The statutory provision in regard to the printing of official reports of state officers is the following:
Session Laws of 1889, § 3, p. 417. — “ All officers required by any law of the state to make reports to the governor or legislature, shall deposit the same with the governor on or before the fifteenth of November next preceding the regular session of the general assembly, and it shall be the duty of the secretary of state to place said reports without delay in the hands of the person authorized to do the public printing, for publication, and to superintend the printing of the same and to see that it is done in a proper manner; of each of the reports of said officers there shall be published five hundred (500) copies for the use of the general assembly and the state offices; Provided, That none of said reports shall exceed one hundred and fifty pages.”
By sec. 11, p. 374, Sess. Laws of 1889, the state engineer is required to make a report. It is as follows :.
*254 “ The state engineer shall prepare and render to the governor a full and true report of his -work, regarding all matters and duties devolving upon him by virtue of his office, which report shall be delivered at the time when the reports of other state officers are required bylaw to be made, in order that it may be laid before the general assembly at each regular session thereof.”
The general appropriation bill, Sess. Laws, 1891, p. 33, eontains the following clause, deemed by defendant important to be considered in reviewing this case: “For the printing required by the eighth general assembly for the years 1891 and 1892, * * * and any printing required by law or ordered by either branch of general assembly, the sum of $50,000.”
Practically but one question is presented: • Could the legislature by joint resolution, without the concurrence of the executive, order the printing of 3000 copies of a report of 600 pages for general distribution among the people, by the officer making the report, and legally appropriate the sum of near <f4,000 in payment of the same ? It cannot be successfully contended that the general assembly derived any power from, or were in any way controlled or restricted by, the statutory provisions above cited. The supreme power of legislation upon all subjects not prohibited by the constitution being vested in such legislative body, any subsequent act would, by implication, repeal any former repugnant act, even if the same was not repealed in terms. Sec. 11 of the act of 1889, creating the office of state engineer and defining his duties, requires him “ to render to the governor a full and true report of his work, etc., which shall be delivered at the time when the reports of other state officers are required by law to be made, in order that it may be laid before the. general assembly at each regular session thereof.” The objects of such requirement are plain; first, to inform the executive and legislature in regard to the department; second, to allow the governor to recommend legislation, should the law be found defective, or suggest necessary legislation if recommended by the officer.
It appears that the state engineer had complied with the . *255 requirements of this section; had made his report to the governor; that he had laid it before the general assembly, and after being laid before the general assembly, that body resolved “ that 8000 copies, * * * he printed as prepared, to be, by the state engineer, distributed among the people of the state” It will at once be observed that the indebtedness was not created in getting up the report and in getting it before the governor and general assembly, as that had al-ready been done. The governor and general assembly had been fully informed and had derived from such report all the information contemplated by statute and necessary for the transaction of the public business. But when- the report has been made as required by law, and has performed all the functions required, and subsequent action taken to print a large number of copies for gratuitious distribution, another and different question is presented, and we are at a loss to see how the right to contract the debt can be predicated up-, on such statute.
So too, in the act of 1889, § 3, p. 417, “ All officers required by law to make reports shall deposit them with the governor on or before the 15th of November next preceding the regular session of the general assembly, and the secretary of state shall without delay have 500 copies of each of said reports printed for the use of the general assembly and the state officers; Provided, That none of said reports shall exceed one hundred and fifty pages.”
This, of necessity, precedes the consideration of such reports by the general assembly, and is a limitation and restriction upon the power of the secretary of state as to the expense, unless the same is properly authorized and done under contract. It is apparent that the authority to cause the printing to be done was not conferred by any previous statute, consequently, must depend entirely upon the validity of the joint resolution. It is conceded that the joint resolution was not presented to the governor for his approval. It is obvious that the legislation in question was not embraced in the exceptions mentioned in sec. 39, art. 5, of the Constitution, *256 hence, was inoperative and invalid, and conferred no authority upon the secretary of state to create the debt. The language of the constitution is so plain and unmistakable, and legislation of the character in question so clearly prohibited that construction of the constitution and the Pitation of authorities in support of the conclusion above stated are unnecessary and would not be indulged in except for the elaborate and able brief and argument of the defendant in error. It is equally clear that no legal appropriation for the payment of the bill was made by the legislature. If, as contended, there was an intended or attempted appropriation for that purpose, it was invalid, — contravening sec. 32 of art. 5 of the Constitution — by not being made by a separate bill “ embracing but one subject.”
Very little support for the positions taken by the defendant can be derived from the action of congress, or the states cited. In some, the constitutions are quite different, and in all the cases where the power to enact by joint resolution has been sustained, it will be found that the subject-matter of the attempted legislation differed materially from that attempted in this instance. Stripped of all its supposed surroundings, it was nothing more nor less than an attempted appropriation of public money for the education and enlightenment of the people. The intention was good; the object praiseworthy ; the subjects ably treated in the report, intimately connected with one of the most important industries of the state, hence, of great importance. Perhaps no disposition of the same amount of money in any other direction would have been equally as beneficial, but the mistake was in the attempt to dispose of public money, without the cooperation of a co-ordinate and equally important and responsible branch of government. The exigencies of public business require that limited expenditures for necessary routine work should be within the reach and under the control of the legislative body, and provision is made in the constitution and by statute, but general legislation for the people *257 of the state, without the concurrence of the executive, is expressly prohibited.
It is expressly declared in sec. 83, art. 5 of the Constitution, “No money shall be paid out of the treasury except upon appropriation made by law,” etc.; and by sec. 17, “No law shall be passed except by bill.” Aside from the fact that the resolution was not submitted to the governor, it was in no sense a law within the requirements of the constitution. By sec. 18, art. 5, it is said — “ The style of the laws of this state shall be ” — “ Be it enacted by the general assembly of the state of Colorado.” The distinctions between a bill and a joint resolution are well defined. In regard to the manner of passage, publication and time of taking effect, they are widely different. It is conceded that it was not a law, and not being a law could not, under the circumstances, create a state debt, nor appropriate money for the purpose intended; and not being a law and the constitution prohibiting the payment of money “ except upon appropriations made by law,” would afford neither justification nor protection to the officer if the money was paid. In support of these conclusions see Cooley on Const. Lim., 94, 156.
Burritt v. Comrs., 120 Ill. 322, is a case almost indentical with the one under consideration. The provisions of the constitution of that state, construed by the court, are identical in substance with ours and couched in almost the same words. By joint resolution commissioners were authorized to purchase a sufficient number of copies of “ Haines Township Organization Laws,” to supply seven copies to each organized township in the state, etc.; payment was refused, application made for a mandamus to compel the payment. In an able and carefully considered opinion, it was held, that the proceeding by joint resolution was in direct contravention of the constitution.
See also May v. Rice, 91 Ind. 546, where the same questions are presented and discussed, and same conclusions reached. See People v. Spruance, 8 Colo. 314.
It is contended for defendant in error that, the secretary *258 of state being the general purchasing or contracting agent of the state, and having made the contract, which was performed and the benefits received by the state, it was bound to make payment, etc. With this we fully agree. The state is morally if not legally bound to pay, but neither moral nor legal obligation of the state to pay the debt would authorize the officers to pay when not authorized by law, nor would such legal or moral obligation of the state protect the officer in the payment, if such payment was prohibited by the constitution. It is also contended on the part of the defendant in error that, allowing the proceeding to have been irregular and unwarranted, it had subsequently been ratified bjr the clause above cited from the general appropriation bill, hence, it was the duty of the plaintiff to draw a warrant for it. This contention cannot prevail, for two cogent reasons. First, there is no mention made of the matter, nor any specific intention to ratify it expressed. Second, in our view of the case, if there was an attempted ratification by appropriation of money to pay it, such appropriation was void under sec. 32, art. 5 of the Constitution: “ The general appropriation bill shall embrace nothing but appropriations for the ordinary expenses of the executive, legislative and judicial departments of the state, interest on the public debt, and for public schools. All other appropriations shall be made by separate bills, each embracing but one subject.”
The failure to pay the debt, undoubtedly, works a hardship upon the defendant. It accepted the contract in good faith; with no doubt in regard to its validity, performed its part. No question is made as to price — that it should be paid goes without saying, but public officials are bound by inexorable law in regard to the disposition of public money, and are properly made responsible for all disbursements, and should be protected. Further legislation seems to be needed to provide for the payment of this debt.
• The judgment of the district court is reversed. The demurrer should have been sustained.

Reversed.