No. 21,790.

THE STATE OF KANSAS, ex rel. S. M. BREWSTER, as Attorney-general, etc., *Plaintiff*, v. F. W. KNAPP, as State Auditor, etc., and WALTER L. PAYNE, as State Treasurer, etc., *Defendants*.

SYLLABUS BY THE COURT.

CONSTITUTIONAL LAW — *Enactment of Statute — When "House Concurrent Resolution" May Become a Law.* Under a constitution which provides that "no law shall be enacted except by bill," but which recognizes that a joint resolution passed by the senate and house of representatives may in some circumstances become a law, a proposition passed by both houses and approved by the governor may be regarded as a bill within the meaning of the provision quoted, where it has received the treatment of such a document and has every characteristic thereof except that it describes itself as a concurrent resolution, and contains the words "Be it resolved by the house of representatives of the state of Kansas, the senate concurring therein," instead of the constitutional formula for an enacting clause, "Be it enacted by the legislature of the state of Kansas."

Original proceeding in mandamus. Opinion filed March 9, 1918. Judgment for the plaintiff.

*S. M. Brewster*, attorney-general, for the plaintiff.

*F. W. Knapp*, and *Walter L. Payne*, *pro se*.

The opinion of the court was delivered by

MASON, J.: Merrell Gage has presented to the auditor a claim against the state for $1,500 on account of a statue of Lincoln recently erected on the statehouse lawn, and has requested its allowance. The auditor, being in doubt as to the legal authority for the payment of the claim, has declined to approve it until the question shall have been judicially determined. For the purpose of such determination this proceeding has been brought, a mandamus being asked by the attorney-general, requiring the auditor to approve the claim

and issue a warrant therefor, and the state treasurer to pay it. The case is submitted upon the pleadings. It is agreed that the plaintiff has done everything possible on his part to entitle him to the payment asked, and the only doubt in the matter is whether any valid appropriation has been made therefor. If so, it is by virtue of action of the legislature which is recorded as chapter 346 of the Laws of 1917, reading as follows:

"House Concurrent Resolution No. 25.

"Relating to an appropriation for purchasing and aiding in the erection of the Merrell Gage statue of Abraham Lincoln upon the capitol square.

"Whereas, The sculptor, Merrell Gage, has produced an excellent statue of the great emancipator and typical American, Abraham Lincoln, the completed model of which is on exhibit at Mr. Gage's studio, 1027 Fillmore street, in the city of Topeka; and

"Whereas, Art critics, as well as persons who knew President Lincoln personally, declare the same to be an accurate and lifelike reproduction of President Lincoln; and,

"Whereas, The Woman's Club of the city of Topeka, and many other public spirited citizens of such city, have expressed the desire to have the statue erected on the capitol square, and have expressed a willingness to supply, or to procure the supply of by the city of Topeka, one-half of the cost of such statue and the erection thereof on the capitol square, provided the state of Kansas is willing to permit the same to be placed there, and to pay the other half for the cost and erection of such statue; therefore,

"*Be it resolved by the House of Representatives of the State of Kansas, the Senate concurring therein:*

"Section 1. That the sum of fifteen hundred dollars is hereby appropriated for the purpose of assisting in the purchase, erection and unveiling of a bronze statue of Abraham Lincoln, created by Merrell Gage, said statue to be erected and located upon the statehouse lawn or square, and at such place thereon as shall be designated by the Executive Council of the state, and the Executive Council are hereby authorized and empowered to permit the erection of said statue upon the statehouse lawn or square; provided, that the amount herein appropriated shall be in full of all claims or demands of every kind or character against the state; provided further, that said sum shall not be available or paid until the city of Topeka or the citizens of the city of Topeka shall have made provisions, in full, for the entire purchase price, erection and expenses incident to the unveiling of said statue; or, shall produce and file with the auditor of state a receipt in full from the said Merrell Gage together with a bill of sale transferring to the state of Kansas all of his right, title and interest in and to said statue;

The State, *ex rel.*, v. Knapp.

and, also, a receipt or receipts showing that all expenses of every kind or character incident to the erection and unveiling of said statue has been fully paid and satisfied by the city of Topeka or the citizens of the city of Topeka.

"SEC. .2. That the auditor of state is directed to draw his warrants in favor of Merrell Gage for the sum and the purposes herein named, and upon his verified voucher therefor, accompanied by the receipt and bill of sale provided for in section 1 of this act.

"SEC. 3. This act shall take effect and be in force from and after its publication in the official state paper.

"Approved [by the governor] March 3, 1917.

"Published in official state paper March 7, 1917."

Our constitution provides that "no money shall be drawn from the treasury except in pursuance of a specific appropriation made by law" (art. 2, § 24), and that "no law shall be enacted except by bill" (art. 2, § 20). The same article of the constitution, however, recognizes that a law may be created by joint resolution. The section relating to the exercise of the veto power of the governor reads as follows, the last sentence having been added in 1904:

"Every bill *and joint resolution* passed by the house of representatives and senate shall, within two days thereafter, be signed by the presiding officers, and presented to the governor; if he approve, he shall sign it; but if not, he shall return it to the house of representatives, which shall enter the objections at large upon its journal and proceed to reconsider the same. If, after such reconsideration, two-thirds of the members elected shall agree to pass the bill *or resolution*, it shall be sent, with the objections, to the senate, by which it shall likewise be reconsidered, and if approved by two-thirds of all the members elected, *it shall become a law;* but in all such cases the vote shall be taken by yeas and nays, and entered upon the journal of each house. If any bill shall not be returned within three days (Sundays excepted) after it shall have been presented to the governor, it shall become a law in like manner as if he had signed it, unless the legislature, by its adjournment, prevent its return, in which case it shall not become a law. If any bill presented to the governor contains several items of appropriation of money, he may object to one or more of such items, while approving the other portion of the bill; in such case he shall append to the bill, at the time of signing it, a statement of the item or items to which he objects, and the reasons therefor, and shall transmit such statement, or a copy thereof, to the house of representatives, and any appropriation so objected to shall not take effect unless reconsidered and approved by two-thirds of the members elected to each house, and, if so reconsidered and approved, shall take effect and become a part of the bill, in which case the presiding officers of each house shall certify on such bill such fact of reconsideration and approval." [Italics added.]    (Const. art. 2, § 14.)

This section as originally framed resembled the corresponding section in a number of state constitutions, as well as that of the federal constitution, but the phrase "and joint resolution" .was new, although in Michigan the words "and concurrent resolution" were used (art. 4, § 14), and in Maine "or resolution having the force of law" (art. 4, § 2). The veto clause of the federal constitution is made applicable to "every order, resolution, or vote to which the concurrence of the senate and house of representatives may be necessary (except on a question of adjournment)" (art. 1, § 7). The section quoted expressly declares that if a joint resolution which has been disapproved by the governor afterwards receives a two-thirds vote in each house "it shall become a law." The inference seems clear that a joint resolution which is approved by the governor after its adoption by the legislature thereby becomes a law, although this is not declared in so many words. If a law can be enacted only by bill, and a joint resolution may become a law, it would seem that a joint resolution must be a bill, or may in some instances be regarded as a bill. And such is said to be the congressional practice in this section of a well-known work which dates back to 1856:

"A form of legislation, which is in frequent use in this country, chiefly for administrative purposes of a local or temporary character, sometimes for private purposes only, is variously known, in our legislative assemblies, as a joint resolution, a resolution, or a resolve. This form of legislation is recognized in most of our constitutions, in which, and in the rules and orders of our legislative bodies, it is put upon the same footing, and made subject to the same regulations, with bills properly so called. In congress, a joint resolution, which is the name given in that body to this kind of legislation, is there regarded as a bill." (Cushing's Law and Practice of Legislative Assemblies, 2d ed., § 2403.)

Whether or not legislation may ordinarily be accomplished by means of the adoption of a proposition submitted in the form of a resolution, we conclude that the process used in the case now under consideration amounted to the enactment of a law by bill. While the instrument acted upon by the two houses and the governor described itself as a concurrent resolution, it had every characteristic, in form and treatment, of such a bill as by the combined action of the legislature and the governor becomes a law. It had a title which clearly expressed its subject to be the appropriation of money to pay for the Lincoln

statue. It was read on three separate days in each house. It contained a provision declaring that "this act" should take effect upon its publication. In each house it received the votes of a majority of the members elected, and the result of the roll call was entered in full on the journal. It was submitted to and approved by the governor, and published in the official state paper and in the statute book. "Joint resolutions," which may sometimes become laws, are required by the constitution to be adopted by a majority of the membership in each house (art. 2, § 13), by a recorded vote (art. 2, § 10), as well as to be approved by the governor, and "acts" of the legislature must take effect at a prescribed time, and be published (art. 2, § 19) ; but, save for these requirements, no mere resolution needs to have a title, to be read on three separate days, to show when it takes effect, to be adopted by a yea and nay vote entered on the journal, to be approved by the governor, or to be published. The treatment given this measure seems to show that it was regarded by the legislature and the governor as a "bill." It ought to be given effect as such, unless some insuperable obstacle is interposed. The fact that it is styled a concurrent resolution, rather than a joint resolution or bill, is not in itself especially important. It should be classified by its essential qualities rather than by what it happens to have been called. All that it lacks of the necessary characteristics of a bill is a literal compliance with the requirement that "The enacting clause of all laws shall be 'Be it enacted by the legislature of the state of Kansas.' " (Constitution, art. 2, § 20.) In lieu of this, however, it has one reading "Be it resolved by the house of representatives of the state of Kansas, the senate concurring therein." The courts are divided in opinion on the question whether a provision of the constitution prescribing a form of enacting clause is mandatory or directory. (Note, L. R. A. 1915 B, 1060-1063.) Those which consider it mandatory hold the entire absence of the clause to be fatal (same note, p. 1061), and such is the practice in this state. (*In re Swartz, Petitioner*, 47 Kan. 157, 27 Pac. 839.) But even where that rule obtains, a substantial compliance is all that is deemed necessary. (Note, L. R. A. 1915 B, 1061-1062.) The turning point in the present controversy is whether the words: "Be it resolved by the house of representatives of the state of Kansas,

45—Kan.—1778

the senate concurring therein," convey essentially the same meaning as "Be it enacted by the legislature of the state of Kansas." In a familiar case a conviction on a charge of felony was set aside because the word "the" was omitted from the concluding clause of an indictment, so that it read "against the peace and dignity of state" instead of "against the peace and dignity of *the* state." It was there conceded that a substantial conformity to the requirement of the constitution was all that was necessary, the court saying:

"It is plainly manifest that, the definite article 'the' which should immediately precede the word 'State' being omitted, the conclusion to the indictment in the case at bar falls far short of indicating the power or authority against which the facts charged in the body of the indictment constitute an offense. . . . It is clear that the omission of this word not only changes the sense but the very substance of the clause. . . . In the use of the definite article 'the' immediately preceding 'State' in the conclusion prescribed by the Constitution we have pointed out the State whose peace and dignity has been offended, and by the omission of such definite article we have a conclusion that does not designate the power or authority against which the offense is committed. . . . If this conclusion embraced language similar to that pointed out in the cases to which we have heretofore referred, such as 'against the peace and dignity of our said State,' or 'against the peace and dignity of State of Missouri,' it might be very properly ruled that such language was at least equivalent to the language prescribed by the Constitution, for the reason that it indicated the power and authority against which the offense as charged in the body of the indictment constitutes an offense." (*State v. Campbell*, 210 Mo. 202, 224, 225.)

Whatever may be thought of the application there made of the rule, the statement of the general principle is obviously sound—that the test to be applied is whether the language employed conveys the same meaning as the language prescribed. In the matter now under consideration, if the expression used had been "Be it *legislated* by the legislature of the state of Kansas," or "Be it enacted by the house of representatives and senate of the state of Kansas," it would hardly be doubted that the requirement of the constitution was substantially met. We think that the clause, "Be it resolved by the house of representatives of the state of Kansas, the senate concurring therein," unequivocally indicates that the two houses comprising the Kansas legislature unite in giving their approval to the sections which follow it, with the purpose to give them the effect which they purport to have, and that this

The State, *ex rel.,* v. Knapp.

is all that could have been accomplished by a literal adherence to the formula employed by the constitution.

A requirement of the constitution that "The style of the laws of the state shall be, 'Be it enacted by the legislature of the state of Mississippi,'" was held to be met by the use of the word "resolved" in the place of "enacted," the court saying: "The word 'resolved' is as potent to declare the legislation with as the word 'enacted.'" (*Swann v. Buck,* 40 Miss. 268, 293.)    That decision was followed, the language quoted being expressly approved, in *Smith v. Jennings,* 67 S. C. 324. In *May v. Rice, Auditor,* 91 Ind. 546, a joint resolution for the appropriation of money was held to be ineffective, but it was not in fact approved by the governor, and in the opinion stress was laid on the consideration that the constitution made no provision for the presentation of a joint resolution to the governor for his approval, the case of *Swann v. Buck,* supra, being distinguished on this ground and also upon a difference in the language of the provision regarding the enacting clause.

In at least two instances, the Kansas legislature has attempted to appropriate money by the adoption of a measure described as a joint resolution.    (Laws of 1889, p. 421; Laws of 1891, p. 416.)    It may be doubted whether either attempt was technically successful, for neither document contained any provision as to the time of its taking effect, or for its publication, although each was in fact published in the statute book. Here, however, inasmuch as we conclude that every requirement of the constitution has been substantially complied with, the result is a valid enactment.

Judgment is rendered in favor of the plaintiff, determining that the claim should be approved and a warrant issued and paid.    The issuance of a writ will of course not be necessary.

MARSHALL, J. (dissenting) :    Neither the title to the resolution, nor its enacting clause, if it may be called such, pretends to say that what follows is intended to be a law.    The title to every law, except one, enacted by the legislature in 1917 begins with the words, "An act."    The one exception is chapter 91, the title to which, as printed in the statute book, begins with the words, "Relating to"; but on the back of the original bill the title reads:  "An act relating to," etc.    The constitutional requirement concerning the enacting clause was

followed by the legislature, in 1917, in all instances when a law was being enacted. It is safe to say that every member of that legislature understood that both the title to an act and its enacting clause must give warning that what followed was intended to be a law. In the present instance, neither the title nor the enacting clause, nor both together, gave any such warning.

The constitutional requirement is simple. It is generally understood. It is easy to follow. There should be no refinements concerning it. Its simple requirements must be so obeyed, or they will cease to have any force or effect.

DAWSON, J. (dissenting) : I cannot assent to the conclusions of the majority. The legislature will meet again in a few months and doubtless would pay the petitioner's claim in the regular way, by a specific appropriation made by law, as all other proper claims against the state are paid. A house concurrent resolution is not a law. The constitution takes no cognizance of such a resolution and does not define it. A resolution is a declaration of opinion, or the expression of a purpose—nothing more. In the Session Laws of 1917 are concurrent resolutions expressing the compliments of the house and senate to Hon. Charles F. Scott (ch. 339) ; expressing condolences on the death of Frank Edimer McFarland (ch. 345) ; requesting the Kansas senators and representatives in congress to vote for woman suffrage (ch. 351), etc. There are twenty-eight pages of concurrent resolutions in the Session Laws of 1913, the subject matter ranging all the way from memorials to the president on the high cost of living (ch. 341), to denunciations of "log rolling" and "pork barrel" raids on the national treasury (ch. 340). And the decision in this case raises all that sort of stuff to the dignity of legislation!

The constitution recognizes joint resolutions, but the resolution here under scrutiny does not pretend to be a joint resolution. What the constitution does say is that no money can be drawn out of the state treasury except pursuant to a specific appropriation made by law; and it says also that no law shall be enacted except by bill. (*In re Swartz, Petitioner,* 47 Kan. 157, 27 Pac. 839.) Again, the constitution says that every bill shall have an enacting clause, and that it shall plainly run like this: "Be it enacted by the legislature of the state of Kansas." Compliance with that provision of the con-

The State, *ex rel.*, v. Knapp.

stitution is wanting in the resolution. The familiar, effective and summary way of killing a bill in the legislature is by striking out its enacting clause.

I know quite well that the spirit of our time is to give regard to the substance and not to the form of things. I trust I am in accord with that spirit; but disregard of fundamentals is not a true interpretation of that spirit. Every change does not necessarily lead to progress. There are a few plain, positive restrictions upon the delectable task of getting money out of the state treasury which the constitution requires to be observed, and which it will be mischievous to disregard. A resolution of the two houses of the legislature to apropriate money is merely a declaration of the house and senate that they intend to see to it that a law to that effect will be duly enacted. The student who cares to investigate this subject will find that the Kansas legislative custom is to follow up these resolutions to draw money from the state treasury with specific items of appropriation to that effect. These are usually inserted in the miscellaneous appropriation acts. For example, a senate concurrent resolution to appropriate $6,000 for a statue of Governor Glick (Laws 1913, ch. 364) was followed by an item in the miscellaneous appropriation act to the same effect. (Laws 1913, ch. 60, item 34.) In discussing the necessity of following up this resolution with a corresponding item in the miscellaneous appropriation bill, the member from Atchison (Hon. J. W. Orr) said: "All the resolution amounts to is three cheers for Governor Glick." In 1903, the house concurrent resolution authorizing a statue of John J. Ingalls (House Journal, 1535, 1612; Senate Journal, 843, 844) was followed by a specific item appropriating $6,000 in a formal act of the legislature. (Laws 1903, ch. 35, item 138.) See, also, Laws 1913, ch. 364; and Laws 1913, ch. 60, item 54. Such illustrations could be indefinitely extended.

Mandamus is a discretionary writ. It should seldom issue in any gravely debatable case. The courts, the legislature and the executive officers are all solemnly sworn to uphold and defend the constitution. If we are to have and maintain a constitutional government, we must stand by it, and not whittle it away so that it will mean nothing but a few glittering generalities.

WEST, J., joins in the dissent.