No. 9649.

*Prior et al. v. Noland.*

1. CONSTITUTIONAL LAW.—*Construction of the Constitution.* In construing any provision of the Constitution the presumption is in favor of the meaning in which the words in question are usually understood.

2. ——*Referendum,* does not extend to resolutions. In view of the precise words of sec. 1 of art. V, of the Constitution by which the referendum is extended to any *act,* or part of an *act;* that the petition shall be filed within a specified period from the adjournment of the session of the General Assembly that passed the bill on which referendum is demanded, and that the filing of a referendum petition against any act, or part of any act shall not delay the remainder of the *act* from

becoming operative, *held* that the referendum is not granted to a mere resolution; e. g., amendment proposed by Congress to the Federal Constitution.

*Herbering v. Brown* (Ore.), 180 Pac. 328; in re Opinions of Justices (Maine), 107 Atlantic 673, followed.

The "Legislature." as used in Article 5 of the Federal Constitution, means the body composing the ordinary law-making body of the state.

The people have no power to ratify amendments proposed to the Federal Constitution, and therefore cannot exercise the referendum upon such resolution adopted by the Legislature.

*Error to the Denver District Court, Hon. Julian H. Moore, Judge.*

Mr. WALTER M. APPEL, Mr. N. WALTER DIXON, for plaintiffs in error.

Mr. VICTOR E. KEYES, Attorney General; Mr. WILLIAM R. RAMSEY, Assistant Attorney General; Mr. CHARLES ROACH, Deputy Attorney General; Mr. HARRY C. RIDDLE, for defendant in error.

Mr. Justice Allen delivered the opinion of the court.

THIS is a suit in mandamus. The trial court sustained a demurrer to the petition, and a judgment of dismissal was entered. The petitioners bring the cause here for review, assigning as error the sustaining of the demurrer.

The petition for a writ of mandamus, with the exhibit attached thereto, discloses the following facts:

The Sixty-fifth Congress of the United States, at its second session, in December, 1917, by a joint resolution duly adopted, proposed an amendment to the Constitution of the United States, popularly known as the "National Prohibition Amendment."

On January 15, 1919, the General Asesmbly of the State of Colorado ratified the proposed amendment by a concurrent resolution, which, after reciting the Joint Resolution of Congress, proposing the amendment, contains the follow-

ing language: *"Therefore, Be It Resolved,* by the General
Assembly of the State of Colorado, That the said proposed
amendment to the Constitution of the United States of
America be and the same is hereby ratified by the General
Assembly of the State of Colorado." Thereafter, and prior
to June 10, 1919, referendum petitions were prepared and
signed, and were tendered, for filing, to the Secretary of
State. In these petitions, the signers "order and demand"
that the resolution of the General Assembly, ratifying the
National Prohibition Amendment, "shall be submitted to
the legal voters for their adoption or rejection at the polls,"
etc. The three persons designated to represent the signers
of the referendum petition are the petitioners in this man-
damus suit, the plaintiffs in error.

The Secretary of State of Colorado, who is the respondent
in this case, the defendant in error, refused to file the peti-
tions, or to so act in the premises, whereby the concurrent
resolution in question would be submitted to the voters at
the next general election for their adoption or rejection.
It is to compel him to thus act, and to file the petitions,
that the writ is sought.

The demurrer which was sustained, and the argument
thereon, present two questions, namely:

1. Does Article V of the federal Constitution, providing
for ratification of proposed amendments "by the legislatures
of three-fourths of the several states," forbid the exercise
of the referendum upon a joint or concurrent resolution
of the General Assembly ratifying a proposed amendment
to the Constitution of the United States?

2. Does Section 1 of Article V of the Constitution of
the State of Colorado authorize and permit the exercise of
the referendum upon such resolution?

Our discussion will be confined, chiefly, to the provisions
of the state Constitution relating to the referendum; in
other words, to the second question above mentioned.

Section 1 of article V of the state Constitution, so far as
the same is pertinent to this case, reads as follows (italics
ours):

"Section 1. The legislative power of the state shall be vested in the general assembly consisting of a senate and house of representatives, both to be elected by the people, but the people reserve to themselves the power to propose *laws* and amendments to the constitution and to enact or reject the same at the polls independent of the general assembly, and also reserve power at their option to approve or reject any *act,* item, section or part of any *act* of the general assembly. The first power hereby reserved by the people is the initiative, and at least eight per cent. of the legal voters shall be required to propose any measure by petition * * *. The second power hereby reserved is the *referendum,* and it may be ordered * * * against any *act,* section or part of any *act* of the general assembly * * *. Referendum petitions shall be addressed to and filed with the secretary of state not more than ninety days after the final adjournment of the session of the general assembly, that passed the *bill* on which the referendum is demanded. The filing of a referendum petition against any item, section or part of any *act,* shall not delay the remainder of the *act* from becoming operative. The veto power of the governor shall not extend to *measures* initiated by, or referred to the people. All elections on *measures* referred to the people of the state shall be held at the biennial regular general election, and all such measures shall become the *law* or a part of the Constitution, when approved by a majority of the votes cast thereon * * *. This section shall not be construed to deprive the general assembly of the right to enact any measure * * *. The secretary of state shall submit all measures initiated by or referred to the people for adoption or rejection at the polls, in compliance herewith." From the above quoted constitutional amendment, it is seen that the people, in granting legislative powers to the general assembly, reserved to themselves "the power at their option to approve or reject any act * * * of the general assembly."

The controversy in the instant case, upon the question now under consideration centers about the word "act" in

the clause last above quoted. It is the contention of the plaintiffs in error that the word is broad enough to comprehend not only a general statute, enacted by a bill, but also such a concurrent resolution as the one involved in this case.

The presumption is in favor of the natural and popular meaning in which the words are usually understood by the people who have adopted them. 12 C. J. 705. In the popular sense, the term "act" refers to a general statute, or law, enacted by a bill. A resolution, concurrent or otherwise, is commonly referred to as a "resolution." The rule that the words and terms of a Constitution are to be interpreted and understood in their most natural and obvious meaning, also tends to exclude a resolution from the meaning of the term "act." An act is a law, and under our state Constitution, "no law shall be passed except by bill." Sec 17, Art. V. It is only in the sense of a law, a statute, that the term "act" is used in the initiative and referendum constitutional amendment. This conclusion is aided by the fact that the term in question is used in connection with the word "bill," where it is provided, that referendum petitions shall be filed, etc., after the adjournment of the general assembly that "passed the bill on which the referendum is demanded." The concurrent resolution involved in the instant case was not passed by a bill; neither does it have the enacting clause, required for "the laws of the state" by Section 18, article V, of the state Constitution. A resolution is not a bill. *May v. Rice,* 91 Ind. 551. The distinctions between a bill and a resolution are well defined. *Henderson v. Lithographing Co.,* 2 Colo. App. 257, 30 Pac. 40. Under these circumstances, we may adopt the following language, contained in *Lithographing Co. v. Henderson,* 18 Colo. 262, 32 Pac. 417. "The concurrent resolution adopted by the senate * * * and by the house * * *, cannot be held to be a law of the state. The resolution was not passed by 'Bill' as provided by sections 17 and 18 of the Constitution."

In *Herbring v. Brown,* 92 Ore. 176, 180 Pac. 328, the supreme court of Oregon, without a dissenting vote, held that the various sections of their initiative and referendum

constitutional amendment "apply only to proposed laws, and not to legislative resolutions, memorials, and the like," and therefore did not apply to the legislative resolution involved in that case, which was a joint resolution of their Legislative Assembly, ratifying the National Prohibition Amendment. The Oregon Court in arriving at its conclusion, considered and adopted the sense in which the terms "bill" and "act" were used in the Constitution before the initiative and referendum amendments were adopted. The same method may properly be employed in the instant case, with the same result, holding that the term "act," as used in the various parts of the Constitution, "means a bill which has been enacted by the Legislature into a law," and further that: "The initiative and referendum amendments were passed and should be construed in the light of the construction put upon the terms 'bill' and 'act' by the instrument they proposed to amend, and taking this view it must be held that, as a joint resolution is neither a bill nor an act, it is not subject to the referendum." The decision of the Oregon court, holding that a legislative resolution ratifying an amendment to the federal Constitution could not be referred to the people, was not based on any grounds going beyond the provisions of the state Constitution itself, or the matters hereinbefore discussed. What has already been said in this opinion is sufficient to dispose of this case, resulting in the determination that our state Constitution does not authorize or permit the exercise of the referendum on any concurrent resolution, or upon the one involved in the instant case.

There are other reasons why the resolution involved in this case is not subject to the referendum. One of these is suggested by the argument of the plaintiffs in error, wherein they state that "it is not reasonable to believe" that the people intended, when adopting the initiative and referendum amendment, "to deny to themselves the right to adopt or reject a measure which, once adopted, can never be amended or repealed except by the concurrence of three-fourths of the States of the Union." In ordinary legislative

matters, the general assembly, of course, derives its power from the people of the state, and the people may reserve to themselves any power they desire, but in the matter of the ratification of a proposed amendment to the federal Constitution, the general assembly does not act in pursuance of any power delegated or given to it by the state Constitution, but exercises a power which it possesses by virtue of the fifth article of the Constitution of the United States. That article provides that proposed amendments "shall be valid, * * * as parts of this constitution, when ratified by the legislatures of three-fourths of the several states." A ratification by a general assembly, of a proposed amendment to the federal Constitution, is not, therefore, law-making legislation for the state, subject to approval or rejection by the referendum. Further, in this connection, we adopt the language of *In Re Opinion of Justices* (Maine), 107 Atl. 673, 674, as follows: "* * * The state Legislature in ratifying the amendment, as Congress in proposing it, is not, strictly speaking, acting in the discharge of legislative duties and functions as a law-making body, but is acting in behalf of and as representative of the people as a ratifying body, under the power expressly conferred upon it by article 5.' The people, through their Constitution, might have clothed the Senate alone, or the House alone, or the Governor's Council, or the Governor, with the power of ratification, or, might have reserved that power to themselves to be exercised by popular vote. But they did not. They retained no power of ratification in themselves, but conferred it completely upon the two houses of the Legislature; that is, the Legislative Assembly." The conclusion just stated, as it is expressed in the paragraph above quoted, results from our opinion upon the question, raised by the demurrer, whether or not the federal Constitution, in Article V thereof, permits a referendum of a resolution of a general assembly which ratifies a proposed amendment to the Constitution of the United States. Article V provides for a ratification of proposed amendments by the "legislatures." It is the contention of the plaintiffs in error

that the word "legislature" thus used means "the whole legislative power of the state." This definition is intended to be made applicable in the instant case by including the legislative power of the people as given by the referendum. In our opinion, however, the term "legislature" as used in Article V of the federal Constitution, means that body of persons composing the ordinary representative lawmaking body of the state. Under that definition it necessarily follows that the people have no power to ratify a proposed amendment to the federal Constitution, by a popular vote, and therefore cannot exercise the referendum upon such a ratifying resolution as is involved in the instant case. The conclusion we reach in this matter is the one adopted, and ably supported, in the opinion of the Justices of the Supreme Judicial Court of Maine, all justices concurring, reported in 107 Atl. 673. A discussion of this subject, which arrives at the same result, may be found in the dissenting opinion of Justice Parker in *State v. Howell* (Wash), 181 Pac. 928. The judgment is affirmed.

*Affirmed.*

*En Banc.*

Mr. Justice Burke and Mr. Justice Teller concur in the conclusion. Mr. Justice Denison dissents.

Denison, J., dissenting:

I cannot agree with the majority opinion.

The so-called National Prohibition Amendment to the Constitution of the United States was ratified by the General Assembly of Colorado by the passage of House Concurrent Resolution No. 1.

This is a suit in the District Court for mandamus to compel the Secretary of State to submit the matter to the People under the so-called Referendum section of the State Constitution. Acts of 1910, p. 11. The District Court sustained a demurrer to the petition and dismissed the cause.

No question is raised as to the sufficiency of any of the proceedings. The question is whether such a proceeding by the Legislature is subject to the referendum.

It seems to me that there are two questions upon which the answer to the above main question depends: 1st. Whether under the United States Constitution (Art. V), the resolution of ratification may be referred to the people. 2nd: Whether the Constitution of this state (Art V, Sec. 1), as amended (S. L. 1910, p. 11), permits the referendum of such a resolution.

Upon the first point the question turns upon the meaning of the word *legislatures* in Const. U. S., Art. V. Under that article the proposed amendment takes effect "when ratified by the *legislatures* of three-fourth of the several states, or by conventions in three-fourths, as the one or the other mode of ratification may be proposed by the Congress." The word legislature has two ordinary and well recognized meanings: 1. The law making power, whatever that may be. 2. That representative body of men chosen by the people to enact laws.

The plaintiff in error claims that the first is the meaning to be attached to it here. This question seems to me to be settled by the case of *Davis v. Ohio*, 241 U. S. 565, 60 L. Ed. 1172, 36 Sup. Ct. 708. The United States Constitution, Art. I, Sec. IV, provides: "The Times, Places and Manner of holding Elections for Senators and Representatives shall be prescribed in each state by the Legislature thereof." In the above case it was held that, under the United States Constitution the act of the General Assembly of Ohio redistricting that state for members of Congress was subject to referendum. This necessarily holds that the word "legislatures" in Art. I, Sec. IV of the Federal Constitution means "legislative power." I can see no difference between the use of the word legislature in Art. 1, Sec. 4, and its use in Art. V. True; the Supreme Court of the United States did not mention this question (of the meaning of the word "legislature"), it only said that the question whether the referendum destroyed republican government in Ohio was for Congress and not for the courts; but it upheld the referendum, which it could not logically do except upon the assumption that the word "legislature" included it. This decision

by the United States Supreme Court upon a federal question must control us. It must therefore be said that, so far as the federal constitution is concerned the referendum is permitted on the question of ratification of a proposed amendment of that constitution.

As to the second point: Our state Constitution provides that the referendum may be ordered "against any *act*, section or part of any *act* of the General Assembly." Other . parts of the section refer to referendum on "Act" or "bill." The argument is that the word "act" is used in its restricted, narrow sense, and that because the ratification was by resolution it cannot be referred. Some states ratify by act and some by resolution. Can it be said that the acts may be referred but not the resolutions? This, of course, leads to the conclusion that the Legislature may evade the referendum, for some purposes, at will. See Sen. Concur. Res. No. 6, S. L. 1919, p. 769; Sen. Joint Res. No 2, 1913, p. 692; S. L. 1911, p. 701; House Res. No. 6, 1909; Sen. Conc. Res. No. 3, 1899; Sen. Res. No. 11, 1901. But the manifest purpose of the initiative and referendum amendment was to reserve to the people control over legislation. The conclusion is unavoidable that any resolution which amounts to legislation is subject to the referendum. The ratification is unquestionably a legislative act. It is making law. Legislation is making law. Jameson Const. Conv., Sec. 513 and 547. It follows that the resolution in question is subject to referendum.

The case of *Collier v. Henderson*, 18 Colo. 259, 32 Pac. 417, holds that, under the Colorado Constitution, a *law* cannot be passed in the form of a resolution, but only by bill enacted according to constitutional form. If this is material to the present case, it can only be to show either that the resolution of ratification was not an act, or that it was not properly passed. It may be conceded at the outset that it was not a bill and upon its passage did not become an act in the sense in which the word is used in the above case. but it created a law; it, with resolutions or acts of other states, subjects the people of this state and the United

States, to a permanent rule of action to which they otherwise would not be subject. This is a quality. of law and not of mere resolution.

It may be conceded that the intent was to exclude ordinary resolutions from the referendum; but here is a resolution not of the ordinary kind, not within the definition of resolution, in the law dictionaries and opinions. It does not merely provde for the doing some particular thing or series of things with the principal purpose of showing authority therefor, nor is it local or temporary in its nature, nor does it relate to some particular person or class of persons. It is not a recommendation or request. It has indeed none of the qualities of a resolution except its form and name. It has, as above stated, the essential and fundamental quality of an act or law, i. e., it fixes a rule of action for all people. It is therefore within the spirit and purpose of the amendment.

If it be claimed that we have proved too much, because, if the resolution be a law, it should have been enacted by bill in constitutional form, the answer is, so be it. If it is impossible constitutionally to legislate in Colorado except by bill then the prohibition amendment has never been ratified by Colorado. To conclude otherwise is to put form before substance, words before spirit and purpose. I do not, of course, maintain such a proposition, but think that the custom of conducting this particular legislation being sanctioned by its acceptance by Congress for a century makes it a valid method. Nature and substance—not form, control.

To recapitulate. 1. The referendum of the resolution of ratification is permitted under the Constitution of the United States, because the question turns on whether the word "legislature" means legislative power, of whatever kind. It is a question of construction of the Federal Constitution, on which we are controlled by the Federal Supreme Court. That court has held that the word does mean legislative power. 2. The referendum of the resolution is permitted under the state constitution, because the initia-

tive and referendum amendment must be construed to effectuate its purpose. It is the manifest purpose of the people that by referendum they shall retain control of legislation. We know this from the amendment itself, and from the history of its origin, propagation, development and enactment. The resolution of ratification is legislation in its most solemn form. Therefore it is subject to the referendum. Case should be reversed.