## Commonwealth v. Illinois Central Railroad Company.

(Decided November 10, 1914.)

### Appeal from Jefferson Circuit Court (Criminal Division).

Statutes—Style of Laws—Omission of Enacting Clause.—An act of the General Assembly that omits the enacting clause is in violation of section 62 of the Constitution, and is void.

JAMES GARNETT, Attorney General; ROBERT T. CALDWELL, Assistant Attorney General, and J. M. HUFFAKER for appellant.

TRABUE, DOOLAN & COX and R. V. FLETCHER for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

The Illinois Central Railroad Company was indicted in the Jefferson Circuit Court for the offense, "of unlawfully and wilfully charging an adult in excess of 2½ cents per mile for the carriage of such," as a passenger. This was alleged to be in violation of Chapter 68 of the Acts of the 1914 session of the General Assembly. To this indictment the lower court sustained a demurrer and the Commonwealth appeals.

So much of the chapter as is necessary to illustrate the issue is as follows:

## "CHAPTER 68.

"An Act to establish and regulate the maxium rate of charges for the transportation of passengers by corporations or companies operating or controlling railroads within the boundaries of this State in part or in whole.

"Sec. 1. That it shall hereafter be unlawful for any common carrier earning as much or more than $4,000 per year per mile gross, from all sources on its said road, and engaged in the carriage of passengers upon a railroad or railroads, between points in this State, to charge in excess of two and one-half cents per mile for the carriage of an adult passenger * * * ."

It will be noticed that the act does not contain an enacting clause. For that reason the lower court sustained the demurrer, holding that the act was null and void, because it is in violation of the following section of the Constitution.

"Sec. 62. Style of laws.—The style of the laws of this Commonwealth shall be as follows:

"Be it enacted by the General Assembly of the Commonwealth of Kentucky."

The application of this section of the Constitution is the only question involved in the case. As far as this section is concerned, the question is a new one in Kentucky. Whether it is mandatory, we believe there is nothing novel about it.

Cases of this character are always approached reluctantly and with embarrassment. It is no light thing to question the validity of an act of the General Assembly. The policy of this court has been to uphold and enforce their enactments whenever possible, and if it could be done without violence to the Constitution. But it has always conceived it to be its duty to declare a law invalid

to the extent that it did not come within constitutional limitations. For a century it has been the accepted law of this Commonwealth that all constitutional provisions are mandatory, and, at least, three of our Constitutions were adopted and accepted by the people with that understanding.

The proposition that confronts us here is one that accompanies most every case of this character, and that is, whether a matter of expediency shall outweigh the Constitution. We have a piece of remedial legislation—supposedly enacted by the people's representatives in answer to a popular demand. Yet it is in plain violation of the Constitution, the most solemn and forceful expression of the will of the whole people. To this document, to its mandates, all legislatures, courts, officials—mere agents and servants of the people, and the people themselves must conform. The meaning of the section is unmistakable, for its terms are simple and easily understood. We repeat that it requires all laws shall be styled, "Be it enacted by the General Assembly of the Commonwealth of Kentucky."

The alleged act or law in question is unnamed—it shows no sign of authority—it carries with it no evidence that the General Assembly or any other law-making power is responsible or answerable for it. The question then is, can this court, sworn to uphold the Constitution, approve or validate an act, which was framed and passed in disregard of a constitutional mandate, wholly wanting in the first essential to its validity? For the sake of expediency or in answer to an alleged popular demand, can we say that the Constitution is not binding on the General Assembly? Or, can we override it to the extent of usurping a function of the General Assembly and presume to amend a bill, or supply the thing needful? To answer the questions affirmatively, is to say that the Constitution is nothing more than a set of suggestions framed for the convenience, not the government, of those living under it, and that it may be accepted or rejected, in part or as a whole at their pleasure. Such an idea of the Constitution is ridiculous, even repulsive, to all who remember that constitutional government originated in a determination of the people to prevent usurpation of power by their agents, and it made no difference in their determination, whether such power be used for oppression or expediency. If this purpose of the people is to be effectuated and their objects at-

tained, then the Constitution, the outgrowth of that pur-
pose, must be held inviolable and every section of it man-
datory.

Before proceeding further with the consideration of
this question, there is another rule of law to remember,
and that is that the courts will not go behind an enrolled
bill to impeach or support it, or to ascertain its terms.
Vogt v. Beauchamp, 153 Ky., 64. Duncan v. Combs, 131
Ky., 330, and the numerous authorities there cited. In
the details of legislation leading up to final passage and
enrollment, prescribed by the Constitution, this court will
assume that the General Assembly, a co-ordinate branch
of government, has complied with all of them. But, even
if we had that power to review, the situation is not re-
lieved, for the enrolled bill, as appears in the published
acts, is without an enacting clause, and the original bill
itself was similarly defective. In this respect, the bill as
published is in the same condition as when introduced.

We believe a provision similar to this is found in the
Constitution of nearly every State, and in a number of
them this identical question has arisen, and, with per-
haps one exception, Missouri, their courts have held that
the absence of an enacting clause is fatal to a bill. Some
few states have upheld bills where there was a substan-
tial, or attempted compliance with the provision, but in
the case we have here, there is neither substantial, at-
tempted nor pretended compliance. There is no enacting
clause at all.

The Minnesota Constitution provides, that, "The
style of all laws of this state shall be, 'Be it enacted by
the State of Minnesota.'". The case of Sjoberg v. Secu-
rity, etc. Association, 73 Minn., 203, decided in 1898, in-
volved a bill without an enacting clause. The court held
the constitutional provision mandatory, and a statute
without any enacting clause void. Reaching that con-
clusion this language was used:

"All written laws in all times and in all countries,
whether in the form of decrees issued by absolute mon-
archs or statutes enacted by king and council, or by a
representative body, have, as a rule, expressed upon their
face the authority by which they were promulgated or
enacted. The almost unbroken custom of centuries has
been to preface laws with a statement of some form de-
claring the enacting authority. If such an enacting clause
is a mere matter of form, a relic of antiquity, serving ·
no useful purpose, why should the Constitution of many

of our States require that all laws must have an enacting clause, and prescribe its form? * * * It is not necessary to go to the extent of holding that, in the absence of any constitutional provision on the subject, a statute without an enacting clause would be void. But we do hold that the framers of our Constitution, and the people adopting it, advised by the usages of the past, and the wisdom and legal learning of the men who had framed the Constitution for so many other States, regarded an enacting clause in a law as useful, necessary and proper, and that they therefore anchored in the Constitution a requirement that every law should have an enacting clause and prescribed the form thereof."

The Constitution of Michigan provides that the style of all laws shall be: "The people of the State of Michigan enact." In the case of People v. Dettenthaler, 118 Mich., 595, decided in 1898, the court held that the provision of the Constitution was mandatory, and that a law passed without an enacting clause was invalid.

Section 21 of the Constitution of North Carolina is as follows: "The style of the acts shall be: 'The General Assembly of North Carolina do enact.'" In that State a bill was passed defining a criminal offense. There was no enacting clause. In State v. Patterson, 98 North Carolina, 660, decided in 1887, the court said that whenever the Constitution prescribed a particular act or thing to be done in a specified way and manner:

"Such direction must be treated as a command, and an observance of it is essential to the effectiveness of the act or thing to be done. Such can not be complete—such thing is not effectual until done in the way and manner prescribed * * *.

"The purpose of thus prescribing an enacting clause, 'the style of the acts,' is to establish the act—to give it prominence, uniformity and certainty—to identify the Act of Legislature as of the General Assembly—to afford evidence of its legislative statutory nature and to secure uniformity of identification, and thus prevent inadvertence, possible mistake and fraud. Such purpose is important of itself, and as it is of the constitution a due observance of it is essential.

"The manner of the enactment of a statute is of its substance. This is so in the nature of the matter as well as because the Constitution makes it so."

The court goes on to point out that the Legislature cannot enact a verbal expression of its will, and that

various details of the enactment, such as authentication, etc., are material and essential. Continuing, the court says:

"And for the like and other reasons the enacting clause is likewise essential * * * *. The Constitution makes it so; and what authority under the Constitution can be heard to say it is not important and may be dispensed with?"

The Constitution of Indiana requires the style of every law to be: "Be it enacted by the General Assembly of the State of Indiana." By a joint resolution of the two houses a bill was passed to appropriate money. The court held that money could only be appropriated by an enactment, not by resolution. May v. Rice, 91 Ind., 546, in answer to the contention that the resolution was in effect a law, and that it should be so regarded by simply considering the word "Resolved" in the enacting clause to mean "Enacted," and in that way bring the measure within the scope of the constitutional requirement, said:

"To say that a provision is directory, seems, with many persons, to be equivalent to saying that it is not law at all. That this ought not to be so must be conceded; that it is so we have abundant reason and good authority for saying. If, therefore, a constitutional provision is to be enforced at all, it must be treated as mandatory. And if the Legislature habitually disregard it, it seems to us that there is all the more urgent necessity that the courts should enforce it." (Cited from Cooley on Constitutional Limitations, 5th Ed., p. 180.)

"In this case the language of the Constitution is so plain and emphatic, that we need not inquire for reason in its adoption. In such a case, our duty is a plain one, to declare and uphold the Constitution. If we may hold the section under discussion to be directory, it seems to us, that to be consistent, we would be compelled to make a like ruling as to every other section of the Constitution."

The Nevada Constitution provides that the enacting clause shall be, "The people of the State of Nevada represented in Senate and Assembly do enact as follows." In State of Nevada v. Rogers, 10 Nev., 250, decided in 1875, it was held that the omission of the words, "Senate and" from the enacting clause rendered the act null and void. The opinion makes this significant observation:

"Every person at all familiar with the practice of

legislative bodies is aware that one of the most common methods adopted to kill a bill and prevent its becoming a law is for a member to move to strike out the enacting clause. If such a motion is carried, the bill is lost. Can it be seriously contended that such a bill, with its head cut off, could thereafter by any legislative action become a law? Certainly not. The certificates of the proper officers of the Senate and Assembly that such an act was passed in their respective houses do not and cannot impart vitality to any act which upon its face failed to express the authority by which it was enacted. * * * *

"This language is susceptible of but one interpretation. There is no doubtful meaning as to the intention. It is, in our judgment, an imperative mandate of the people in their sovereign capacity to the Legislature, requiring that all laws to be binding upon them shall, upon their face, express the authority by which they were enacted, and as this act comes to us without such authority appearing upon its face, it is not a law."

In Boyen v. Crane, 1 W. Va., 176, the omission of the enacting clause from a joint resolution adopted by the General Assembly of that State was held to render it absolutely void.

In Burritt v. State Com., 120 Ill., 322, 11 N. E., 180, the Illinois Court in considering their constitutional provision that the enacting clause of all bills should read, "Be it enacted by the people," held that there was no substantial compliance with the Constitution in the use of "Resolved by the Senate and House of Representatives concurring therein."

The text writers declare the law to be as announced in the cases above cited. Lewis' Southerland Statutory Construction, 2d Ed., Sections 70 and 71; Cushing's Law and Practice of Legislative Assemblies, 9th Ed., Sections 2101 and 2102. With reference to constitutional requirements Cushing makes the following comment:

"I. Where enacting words are prescribed, nothing can be a law which is not introduced by those very words, even though others equivalent are at the same time used.

"II. Where the enacting words are not prescribed by a constitutional provision, the enacting authority must notwithstanding be stated; and any words which do this, to a common understanding are doubtless sufficient; or the words may be prescribed by rule."

In Tennessee the courts have adhered to the rule that

constitutional provisions are mandatory, although a bill will not be invalidated where there was a substantial compliance. To illustrate. In State v. Burrow, 119 Tenn., 376; 104 S. W., 126, the Supreme Court of Tennessee, had under consideration a section of the Tennessee Constitution which reads as follows: "Be it enacted by the General Assembly of the State of Tennessee." A bill had been passed containing all of this enacting clause except the words, "the State of." With reference to this section of the Constitution, the court, in an elaborate discussion of the subject, concludes:

"We think this one clearly mandatory, and must be complied with by the Legislature in all legislation important or unimportant enacted by it; otherwise, it will be invalid."

But the court held that the enacting clause of the bill did substantially comply with the mandate of the Constitution, and was, therefore, valid.

Maryland and Mississippi courts have not required literal compliance. For instance in Mississippi the Constitution says: "The style of their laws shall be, 'Be it enacted by the Legislature of the State of Mississippi.' " An act began with these words: "Resolved by the Legislature of the State of Mississippi." The court sustained the act, holding that the word "Resolved" was equivalent to the word "enact," and that the measure was in fact a law notwithstanding the use of the word "Resolved." The court said: "The word resolved is as competent to declare the legislative will as the word enact."

In Maryland the subject was first disposed of by a divided court in the case of McPherson v. Leonard, 29 Md., 377. The Maryland Constitution provides: "The style of all laws in this State shall be, 'Be it enacted by the General Assembly of Maryland.' " The act in question omitted the words "by the General Assembly of Maryland." The conclusion of the majority court on that subject is as follows:

"Being satisfied that the words, 'By the General Assembly of Maryland,' are not of the essence and substance of a law, but their use directory only to the Legislature, we cannot, because of their omission from the enactment, declare the law in question unconstitutional and void."

In the later case of Postal Telegraph Co. v. State, 110 Md., 611, the McPherson case was again discussed, but the court refused to overrule it because:

"It might therefore do great injustice to those who relied on and had the right to rely on a decision of this court to hold that it had been overruled by a case which in no manner involved the clause in question and we can not so hold."

But of the constitutional provision and the McPherson case, the court did say:

"If we were passing on this provision for the first time, we might hesitate to hold that it was not mandatory—especially in view of the conclusions reached by many other courts in construing similar provisions. There is certainly much to be said in favor of a strict compliance with a clause in the Constitution which uses such plain, comprehensive language as this one does * * * "

In the Mississippi, Maryland and Tennessee cases, *supra*, it will be observed that there was an enacting clause to each bill under consideration. The objection went to the failure in *haec verba* to use the style prescribed. The courts merely held that a substantial compliance was sufficient. But in the instant case, there is absolutely no enacting clause. There is nothing to indicate the source from, or authority by which the law is proclaimed. There is not even a proclamation using as much as the word "Enacted" or the word "Resolved" or some other word of that character.

In Oklahoma the Constitution provides: "The style of all bills shall be, 'Be it enacted by the people of the State of Oklahoma,' " A legislative bill without an enacting clause was held to be good in *ex parte* Hudson, 106 Pacific, 540, but in that State, there is a constitutional provision for the enactment of laws directly by the people under what is known as the Initiative and Referendum. The court held that the constitutional provision, *supra*, had reference alone to direct legislation by the people, and their laws under the Initiative and Referendum must be styled in the manner provided by the Constitution, but the Legislature was under no such restriction.

The Missouri Constitution has a similar requirement as to enacting clause, and there the Legislature is the supreme and only law-making power. The Supreme Court of Missouri has held an act of the Legislature is valid which has no enacting clause at all. Cape Girardeau v. Riley, 52 Mo., 424. It based its decision in part on a previous decision of the Missouri Court in respect

to the validity of writs issued. By one section of the
Missouri Constitution it was provided, that "all writs
shall run in the name of the State." The Missouri court
was committed to the doctrine that such a provision in
the Constitution was directory merely and not manda-
tory, for it had held that a writ was valid, although not
running in the name of the State. Exactly the contrary
has been the ruling in Kentucky. Section 5, Article 4, of
the third Constitution, and Section 123 of the present
Constitution provide: "The style of process shall be,
'The Commonwealth of Kentucky.'"

In Yeager v. Groves, 78 Ky., 278, this court held in-
valid a writ of attachment, which did not run in the
name of the Commonwealth of Kentucky, although
signed by an officer with power to issue. What was then
said with reference to the application of that provision
of our Constitution is applicable to the case at hand:

"Judicial process is but the command of the sover-
eign by whose authority the tribunal out of which it
issues was established, commanding the person or officer
to whom it is directed, or who is authorized to execute
it, to do certain acts therein specified, and it is there-
fore appropriate that such process shall run in the name
of the government. But whether appropriate or neces-
sary or not, the Constitution requires it, and what that
instrument requires should be done without hesitation or
inquiry into the question whether, abstractly considered,
the thing required is essential or not.

"The clerk of a court has no power to command either
officer or private persons. His only authority is to issue
the command of the Commonwealth in those cases in
which he had been authorized to use the name of the
Commonwealth.

"He is the mere agent of government, with authority
to act for it and in its name in issuing judicial process,
and he has no more authority to issue such process in his
own name than a private person has."

The basis of the Missouri court's opinion destroys its
value as a precedent in this State.

Certainly there is no longer room for doubt as to the
effect of all provisions of the Constitution of this State.
By common consent they are deemed mandatory, and, as
stated in a recent opinion, perhaps one hundred cases
touching on this subject have been written, but in no
one of them has there been any departure from the prin-
ciple that they are mandatory and that whenever an act

of the Legislature is incompatible with the Constitution, there is no alternative for the court to pursue but to declare that fact and pronounce the act inoperative and void. This uniformity of opinion makes it quite unnecessary to cite, or make quotations from the long list of cases in Kentucky. Perhaps the first was Bliss v. Commonwealth, 2 Littell, 90. And the most recent are McCreary, Governor v. Speer, 156 Ky., 783, and Board of Penitentiary Commissioners v. Spencer, 159 Ky., 255. A reference to the case of Varney v. Justice, 86 Ky., 596, will serve to illustrate the rule in Kentucky, and from this case we quote:

"The Constitution of the State was adopted by the people of the State as the fundamental law of the State. This fundamental law was designed by the people adopting it to be restrictive upon the powers of the several departments of government created by it. It was intended by the people that all departments of the State Government should shape their conduct by this fundamental law. Its every section was, doubtless, regarded by the people adopting it as of vital importance, and worthy to become a part and parcel of the constitutional form of government by which the governors as well as the governed were to be governed. Its very mandate was intended to be paramount authority to all persons holding official trust, in whatever department of government, and to the sovereign people themselves. No mere unessential matters were intended to be ingrafted in it; but each section and each article was solemnly weighed and considered, and found to be essential to the form of constitutional government adopted. Whenever the language used is prohibitory, it was intended to be a positive and unequivocal negation. Whenever the language contains a grant of power, it was intended as a mandate. Whenever the language gives a direction as to the manner of exercising a power, it was intended that the power should be exercised in the manner directed, and in no other manner. It is an instrument of words, granting powers, restraining powers, and reserving rights. These words are fundamental words, meaning the thing itself; they breathe no spirit except the spirit to be found in them. To say that these words are directory merely, is to license a violation of the instrument every day and every hour. To preserve the instrument inviolate, we must regard its words, except when expressly permissive, as mandatory, as breathing the spirit of command."

By an enacting clause, the makers of the Constitution intended that the General Assembly should make its impress or seal, as it were, upon each enactment for the sake of identity, and to assume and show responsibility. While the Constitution makes this a necessity, it did not originate it. The custom is in use practically everywhere, and is as old as parliamentary government—as old as kings' decrees, and even they borrowed it. The decrees of Cyrus, King of Persia, which Holy Writ records, were not the first to be prefaced with a statement of authority. The law was delivered to Moses in the name of the Great I Am, and the prologue to the Great Commandments is no less majestic and impelling. But, whether these edicts and commands be promulgated by the Supreme Ruler or by petty kings, or by the sovereign people themselves, they have always begun with some such form as an evidence of power and authority. It may be that in these days some believe the custom useless, and that the section of the Constitution is a relic of antiquity, that it is simply a high-sounding phrase—empty and meaningless, and, therefore, should be ignored. It may be that some believe an observance of this requirement is not nearly so important or valuable to the people as the present benefits offered in the body of a bill, and they are willing to forego one to acquire the other, but such a thought "makes us rather bear those ills we have, than fly to others that we know not of." It is certain that neither this court nor the Legislature—creatures of the Constitution and sworn to uphold it—can afford to ignore or deal lightly with any section of it. Neither can we say, as for one hundred years this court has steadfastly refused to say, that constitutional provisions are directory, or that the section in question is nothing more than a suggestion of form for drafting a bill. If we so hold as to that section, then we may as to another, and another, and of every other section in it, with the result that none of it will amount to more than a suggestion to people, courts, legislatures, and executives, having no binding or mandatory effect upon any of them, so that they may proceed or no, as they please, without let or hindrance. Such a state of affairs is anarchy—nothing less. The people by their Constitution have set these limitations within which their representatives, officers, and servants must act. The very fact that the limitations are set forth in specific terms is sufficient evidence of their importance. No creature

of the Constitution has power to question its authority or to hold inoperative any section or provision of it. As legislation is needed, whether remedial or restrictive, the General Assembly should act. When their acts are within the Constitutional limitations, they become the law of the Commonwealth. There is no other power of enactment. If from a bill an essential is omitted, they alone can supply it. This court can neither amend nor enact. The bill in question is not complete—it does not meet the plain constitutional demand. Without an enacting clause it is void.

The judgment of the lower court is, therefore, affirmed. Whole court sitting.