# Stickler v. Higgins et al.

(Decided June 18, 1937.)

RICHARD P. DIETZMAN and S. J. STALLINGS for appellant.

LAWRENCE S. GRAUMAN, STUART S. LAMPE, HUBERT MEREDITH, Attorney General, and A. E. FUNK, Assistant Attorney General, for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Section 105 of our Constitution confers authority upon the General Assembly of the commonwealth to consolidate the county offices of sheriff and jailer, and to confer the duties of the latter officer upon the former one, who shall be required to perform them after the consolidation in addition to his prior ·duties as sheriff. The 1934 regular session of our General Assembly attempted by chapter 129, p. 540, of the Session Acts for that year, to exercise that authority by consolidating the two offices in accordance with the authority contained in the section of the Constitution referred to; but by oversight and mistake the constitutionally required enacting clause was omitted from that act, thereby rendering it illegal and invalid. Commonwealth v. Illinois C. Railroad Co., 160 Ky. 745, 170 S. W. 171, L. R. A. 1915B, 1060, Ann. Cas. 1916A, 515. We will hereafter refer to that chapter as the ''invalid'' consolidating act.

On the 7th day of May, 1934, Gov. Ruby Laffoon, by proclamation duly issued pursuant to the provisions of section 80 of our Constitution, convened the General Assembly in Extraordinary Session to begin on May 9, 1934, and in the subjects enumerated by him for consideration at that extra session was a recommendation for the consolidation of the two county offices of sheriff and jailer, because the invalid consolidating act, supra, was ineffectual for that purpose for the reason stated. During that extra session the General Assembly enacted chapter 24, page 214, of the Extraordinary Session Acts, which was in the verbatim language of the invalid consolidating act, supra.

On December 23, 1936, Gov. A. B. Chandler, by the same character of proclamation, convened the General Assembly in Extraordinary Session to commence at a time therein named, and one of the subjects designated by him in his proclamation was ''To repeal chapter 129 of the Acts of the General Assembly of Regular Session of 1934.'' As will be seen, it was the invalid consolidating act that he referred to, and not to chapter 24 of the Extraordinary Session of 1934, supra, and which we will hereinafter refer to as the ''valid'' consolidating act. It is designated in Baldwin's 1936 Revision of Carroll's Kentucky Statutes as section 2237-1 et seq. Gov. Chandler, after convening the 1936 Extraordinary Session—and ·on December 29th of that year—discovering that the invalid act that he had

designated in his original proclamation was ineffectual for the reasons stated—issued another proclamation in strict compliance with section 80 of the Constitution, in which he amended his original call by referring to the error in his original proclamation, and in the amendment he designated the valid act of the 1934 Extraordinary Session as the one to be repealed at the Extraordinary Session called by him. Later on in that session the valid consolidating act of 1934 was repealed by the enactment of chapter 14 of the acts passed at Gov. Chandler's extraordinarily called session (Acts 1936-37, 4th Ex. Sess.), and which we will hereafter refer to as the "repealing" act.

This declaratory judgment action was filed in the Jefferson circuit court by appellant and plaintiff below, B. V. Stickler, as a citizen and taxpayer of that county, against the appellees and defendants below, Robert L. Higgins et al., to test the validity of the repealing act. Plaintiff alleged in his petition as grounds for his attack of the repealing act (1) that Gov. Chandler's 1936 Extraordinary Session was without authority to enact it because the subject to which it relates was not contained in his original proclamation convening the session, and that he was without constitutional authority to later amend, correct, or add to the subjects mentioned in his original proclamation after it had convened and because of which urged reasons the repealing act is itself invalid; (2) if mistaken in attack (1), then the valid consolidating act, passed at the 1934 Extraordinary Session, consolidating the two county offices of sheriff and jailer, was final and that it was incompetent for the Legislature at any future session to repeal it, thereby rendering the repealing act ineffectual; and (3) that if mistaken in both attacks (1) and (2), then the 1936 repealing act is invalid because neither it, nor any other act passed since the valid consolidating act, re-enacted the duties of jailer. Defendants combatted all of those arguments and, in addition thereto, contended that if attack (1), supra, should be sustained, then Gov. Chandler's original proclamation, in designating the invalid chapter 129, supra, was a sufficient compliance with the requirements of section 80 of the Constitution to enable and to authorize the Extraordinary 1936 Session that he called to enact the repealing statute. The learned chancellor before whom the case was heard in the court below denied all of the

grounds relied on in making the attack of the repealing act, and dismissed plaintiff's petition, from which he prosecutes this appeal.

Our determination of attack (1), supra, hereinafter given, will eliminate the necessity for elaborating the contention of defendants that Gov. Chandler's original proclamation convening the 1936 Extraordinary Session sufficiently designated the subject so as to authorize the enactment of the repealing act when he referred to the invalid consolidating chapter 129 of the regular 1934 session of the General Assembly. We will, therefore, pass that question without elaboration, further than to say that there is considerable force in defendants' contention. But, since attack (1) is also made in a number of cases contesting different enactments passed under the same circumstances and in the exercise by the Governor in the same manner of the same authority as was the repealing statute, we have concluded to rest our opinion on the determination of that question (attack 1) and to not detour it by endeavoring to uphold the repealing act on some other ground. We will now proceed to a determination of the three enumerated attacks in the order named.

1. All of the argument in support of attack (1) emanates from and is based upon the correct interpretation of section 80 of our Constitution, saying: "He may, on extraordinary occasions, convene the general assembly at the seat of government, or at a different place, if that should have become dangerous from an enemy or from contagious diseases. In case of disagreement between the two houses with respect to the time of adjournment, he may adjourn them to such time as he shall think proper, not exceeding four months. When he shall convene the general assembly it shall be by proclamation, stating the subjects to be considered, and no other shall be considered." The pertinent part of that section is its last sentence, in this language: "When he shall convene the general assembly it shall be by proclamation, stating the subjects to be considered, and no other shall be considered." The question as presented in this case by the pleadings, by the briefs, and upon oral argument is further narrowed and clarified because of the concession of plaintiff's learned counsel that the Governor, under such constitutional provisions as are contained in section 80, supra, of our Constitution, may by additional procla-

mation issued before the convening of his theretofore called Extraordinary Session make and provide for additional subjects to the one or ones mentioned in his original proclamation. Therefore, the contention of counsel in this case is confined exclusively to the narrow issue as to; whether or not such additional subjects may be added to those contained in the Governor's original convening proclamation *after* the extra session has convened in compliance with it? Learned counsel thus seek to draw a distinction between the authority of the Governor to enlarge the list by suggesting additional subjects, in the constitutional manner, *before* the convening of his extraordinarily called session, and *after* that session shall have convened. Before directing our attention to that precise—and we might say only—contention with reference to attack (1), we deem it pertinent at this point to say that the cases of Sims v. Weldon, 165 Ark. 13, 263 S. W. 42, Foster v. Graves, 168 Ark. 1033, 275 S. W. 653, and Pittsburg's Petition, 217 Pa. 227, 66 A. 348, 120 Am. St. Rep. 845, expressly hold that under substantially similar constitutional provision it is competent for the Governor to add to the subjects for consideration which he includes in his original convening proclamations by later issued proclamations, embracing the additional subjects, when such later proclamations are made prior to the convening of the extraordinary session; but in each of them the reasons given why that may be done before the extraordinary session meets applies, as we conclude, with equal force when the proclamation submitting the additional subjects is issued after such session begins. Each of them hold substantially with our recent holding in the case of Richmond v. Lay, 261 Ky. 138, 87 S. W. (2d) 134, 135, wherein we expressed our view as to the purpose that the convention had in mind in framing section 80, supra, of our Constitution. We said therein: "The purpose of this provision [the last sentence of section 80, supra] is to give notice to the public of the subjects to be considered, in order that persons interested may be present if they desire, and also it is a check upon legislative action, that no matters outside the proclamation shall be acted on."

Another reason given in the cases cited, and others that might be cited, is, that it was not the desire of the makers of the Constitution that an extraordinary session when convened should have the authority to legis-

late within the almost limitless field that a regular session may do, but to confine enactments at such extraordinary sessions to such subjects as the Governor might set before the law making body in the manner prescribed in the Constitution, i. e., by a proclamation, thereby conferring upon him the power and authority to limit in that manner the subjects that the Legislature might consider at such extraordinarily called session. Those reasons are undoubtedly the ones prompting such constitutional provisions, and the purpose thereof is accomplished just as effectually if the additional proclamations submitting other subjects are issued after the extraordinary session is convened, as would be if they were issued within the time intervening between the original proclamation and the convening of the session. To show what we deem the fallacy of the contrary contention here made by learned counsel for defendants, we have but to consider that section 80 nowhere fixes any minimum length of time to convene between the calling proclamation convening the Legislature and the date of its convening. As a matter of fact, the extraordinary session involved in this case was called for only about thirty minutes before it was to convene. That short time violated no provision of the Constitution, because there is no designated period, we repeat, to intervene between the call and the convening of the session. It follows, therefore, that it would have been competent for the Governor to have issued the proclamation only one minute before the convening of the session and in such circumstances there would be no time whatever to add to the subjects mentioned in the original call by subsequent proclamations, unless they be issued after the session convened. If there were other emergency reasons presented to the Governor that additional subjects should be made to the list in his original call, he would thereby be cut off from submitting them in the proper manner to the Legislature, if the contention of defendant's counsel be sound and should be sustained by us.

It will furthermore be seen that a fair interpretation of the involved language of section 80 of our Constitution does not disclose that the Constitution makers were concerned so much as to the time when the proclamation of the Governor should be issued—so as to authorize legislation upon the subjects therein designated—as they were that the subjects should be sub-

mitted in the manner pointed out in that section, i. e., by proclamation. A reason for that was and is, no doubt, that certain official acts of the Governor (among which is the issuing of proclamations) are required to be filed with and recorded by the Secretary of State, whereby they become perpetual memorials in that office, subject to public inspection, and they are not effective until such lodgment is made. After that is done with the later proclamations, containing the submission of additional subjects, their contents are just as available to the public as are the contents of the original proclamation passing through the same course. Moreover, we know as a matter of history that all such proclamations are given like newspaper circulation and any one who might be interested, the one way or the other—either in the passage or the defeat of any proposed legislation concerning the additionally submitted subjects—would have the same opportunity to present his arguments for or against it the same as if it had been contained in the original convening proclamation. Therefore, the purpose intended by the convention to be accomplished by the insertion of section 80 of our Constitution as a part of it is as much subserved in all respects when the additional subjects are submitted, in the manner required, *after* the extraordinary session convenes as when they are submitted between the date of the convening proclamation and the date the session convenes.

Section 79 of the Constitution authorizes and empowers the Governor to ''recommend'' to the Legislature while in session from time to time ''such measures as he may deem expedient.'' Nothing is said in that section requiring his recommendation to be by ''proclamation.'' Under that section, his recommendation might be made verbally in either of the legislative assembly halls, or in any other manner that the Governor might see proper; but in none of which is the method of recommendation required to be made a matter of public record, open to and for the inspection of the public at all times. Not so, however, when the recommendation is required to be made in a specific manner (by proclamation) which is required to become a part of the recorded acts of the Governor upon the records required to be kept in the Secretary of State's office. It was to prevent such indiscriminate recommendations—which might or might not be so memorialized by being

placed upon a public record—that formed the subject-matter of the constitutional debates when section 80 was being considered by the constitutional convention, and to which learned counsel refer us. Nowhere in those debates do we find any objection, or any opposition to the Governor adding to the subjects to be considered at an extarordinary session, if the additions are made in the specific manner pointed out in section 80, i. e., by proclamation.

Moreover, if the invoked debates had been directed to the manner of adding more subjects by later proclamations to the one or ones contained in the original proclamation, and the convention had proceeded to the point where such authority was denied, we could then look to such debates only for the persuasive effect to be given them. They may always be consulted where the language to be interpreted possesses obscurity, ambiguity, or doubt as to its true meaning. But after all, they are only persuasive in such circumstances and never conclusive. See 12 C. J. 711, sec. 64, and the numerous notes and cases cited thereunder. Also Higgins v. Prater, 91 Ky. 6, 14 S. W. 910, 12 Ky. Law Rep. 645, and Commonwealth v. Kentucky Jockey Club, 238 Ky. 739, beginning on page 751, 38 S. W. (2d) 987.

The First Arkansas case, supra, determined the specific question here involved (i. e., the right of the Governor to amend his original proclamation submitting additional subjects after the extraordinary session convened) as is contended for by defendant's counsel. The second cited case from that court dealt only with the right of submitting additional subjects by proclamations, issued after the original call, but before the date of convening, and which, as we have seen, was upheld in both cases, as was also true in the Pennsylvania case of Pittsburg's Petition, supra. However, when the Sims case was before the court, the section of the Constitution of that state (similar to our section 80) contained an addenda whereby the extraordinary session might enact general legislation for a specified time after the subjects submitted by the Governor in such circumstances, and under the phraseology of such constitutional authority to add to the subjects after the session had convened would empower him to protract the session, by the continuous additions of subjects, for such a period as to exhaust the members of the assembly and to thus indirectly deprive them of the right

to enact general legislation for the specified period. We can readily see why such conditions might furnish a reason for the court's conclusion to deny the authority of the Governor therein attempted to be exercised.

In the case of Royster v. Brock, 258 Ky. 146, 79 S. W. (2d) 707, there was involved the single question of the right of the Governor to withdraw his original proclamation after it had been issued and filed with the Secretary of State. The majority opinion held that he could not do so. However, it employed a course of reasoning which lent approval to the right of the Governor to add to the subjects submitted in his original proclamation by later pursuing the same course, and the dissenting opinion in that case expressly so interpreted such reasoning of the majority opinion. We are still of the same opinion that the reasoning employed in the majority opinion was to the effect indicated, and which was supported by the Pennsylvania case, supra, wherein it likened the situation to the Governor making an additional convening call upon the issue of each subsequent proclamation and which that court said would be permissible.

Concluding the discussion of this attack made upon the repealing act, we feel constrained to say that we should be guided in the determination of the question presented by the rule of common sense and logic and not to allow technical interpretation to prevail. Impelled by such influences, we are unable to see wherein the evident object and purpose of inserting section 80 in our Constitution would be the least impaired by permitting the Governor to add to the subjects contained in his original proclamation by other proclamations— though issued *after* the extraordinary session convened —any more than such impairment would occur if the later proclamations were issued *before* the actual convening of the extraordinary session. No sufficient reason is pointed out for the distinction and to our minds it is but an arbitrary one. Being so, we should not set aside solemnly enacted statutes by the Legislature upon such a hypercritical distinction with only such shadowy support, if support at all. Indeed, it is quite possible that the sole reason for the adoption of such constitutional provisions on the subject in hand was to place the directing of legislation at extraordinarily called sessions exclusively in the hands of the Governor in whom

is lodged the power and authority to determine when emergency legislation is required for the benefit of the people of the state with reference to urgent matters; the purpose being to empower and compel him to inclose the field of operations thereat and to thus curb the right of the members to roam at large as they may do at a regular session. Our interpretation preserves to the fullest extent that purpose on the part of the Constitution makers, as well as meeting every other purpose advanced by any court for the adoption of such constitutional provisions, and at the same time encroaches on none of them. We, therefore, conclude that attack (1) should be overruled.

2. The argument in support of attack (2) is rested upon a comparison of section 104 with section 105 of the Constitution. Section 104 authorizes the General Assembly to abolish the office of county assessor, but with the power in the Legislature to re-establish it after such abolishment. Section 105 authorizes legislative consolidation of the offices of sheriff and jailer (not the abolishment of either) and casts the duties of the latter office upon the sheriff during such consolidation, but does not contain express power and authority in the Legislature to thereafter dissolve the consolidation and to thereby re-establish the office of jailer by subsequent legislation. It is, therefore, contended that inasmuch (as counsel concludes) that the word "abolish" as employed in section 104, means practically the same as the word "consolidate," as contained in section 105, the Constitution makers—in expressly providing for the re-establishment of the office of assessor dealt with in section 104, but did not do so with reference to the office of jailer in section 105—intended that no such re-establishment of the office of jailer should be made. To uphold that contention would be in effect a delegation of the power to the Legislature to amend the Constitution in the respect indicated. We do not think that any such implied authority should be injected into that instrument by court interpretation, unless the language involved imperatively so requires and makes such conclusion inescapable. Besides, the constitutional debates when consulted clearly indicate that no such interpretation was within the purpose or intention of the convention. On the contrary, it is our conclusion as based on the debates above—that its members intended to preserve the right of the Legislature to thereafter

dissolve the consolidation after once making it, and that the office of jailer would then be revived. See Volume III, Constitutional Debates, pp. 4035, 4036. In addition thereto, the word "abolish," as applied to the office of county assessor in section 104 of the Constitution, has, as we conclude, an entirely different meaning from the word "consolidation" as employed in section 105, relating to the consolidating of the offices mentioned. The one implies destruction—the other only a uniting together, in which process neither of the consolidated elements is destroyed. At most, they are only commingled, and thereafter the united and commingled production, by whatever name called, is still composed of the same consolidated parts. We feel, therefore, constrained to hold that this attack is also without merit.

3. We have concluded that ground (3) may be similarly disposed of. Neither the valid consolidating act, nor the repealing act made the slightest attempt to alter the duties of county jailer. On the contrary, the former expressly preserved them and shifted their performance upon the shoulders of the sheriff. When it was repealed by the repealing act, those duties were not left without any one to perform them. They had never been repealed and were still a part of the law of the land. Therefore, there is no occasion for the application of section 464 of our Statutes upon which counsel for defendants rely. The jailer was and remained all the while a constitutional officer, since section 105 of our Constitution did not authorize the Legislature to "abolish" it. Naturally and inevitably, when the repealing act took effect, the duties of jailer—like the farmer's brood, continued to roost in the same tree, and they became thereafter possessed by the jailer after the Legislature rescued him from his temporary submergence.

Moreover, the valid consolidating act, by its express terms, was not to take effect until the regular term of the then serving jailer's expired, which was and is the first Monday in January, 1938. It, therefore, at the time of the enactment of the repealing act had only a potential effect, and the repealing act destroyed that potentiality. At the time of its enactment, therefore, no actual consolidation had occurred, and if counsels' reasoning in support of this ground should be accepted as applied to existing conditions *after* such con-

solidation act had taken effect, it by no means follows that it would apply in the circumstances indicated.

For the reasons stated, the judgment is affirmed; the whole court sitting.