REQUESTED BY: Senator Michael J. Flood
Speaker of the Legislature
Nebraska State Legislature
The One-Hundredth Nebraska Legislature began its First Special Session on November 14, 2008. That special session was convened pursuant to a Proclamation issued by the Governor on October 29, 2008, under authority of art. IV, § 8 of the Nebraska Constitution. The Governor's Proclamation called the Legislature into special session "for the purpose of considering and enacting legislation on only" two subjects. Those subjects are:
 1. Enacting legislation to limit the application of 2008 Neb. Laws LB 157, Neb. Rev. Stat. § 29-121, by reducing the maximum age of children to whom the statute applies; and
 2. To appropriate funds to the Legislative Council for the necessary expenses of the extraordinary session herein called.
Neb. Rev. Stat. § 29-121, the statute specifically addressed in the Governor's proclamation, reads as follows:
 No person shall be prosecuted for any crime based solely upon the act of leaving a child in the custody of an employee on duty at a hospital licensed by the State of Nebraska. The hospital shall promptly contact appropriate authorities to take custody of the child.
Your opinion request, which we received late in the afternoon on November 14, pertains to LB 3 from the First Special Session. You wish to know whether, in our view, LB 3 "is within the scope of the Governor's call for a special session of the Legislature to enact legislation that limits the application of Neb. Rev. Stat. § 29-121?" For the reasons discussed below, we believe that it is not.
LEGISLATIVE BILL 3
LB 3 is eight pages long and contains 18 separate sections. Sections 1 through 9 constitute the Nebraska Infant Safe Haven Act which pertains to newborn infants one year of age or younger. Sections 10 through 15 constitute the Nebraska Children's Safe Haven Act which pertains to children older than one year of age and under sixteen years of age.
Section 4 of the Nebraska Infant Safe Haven Act provides that "[p]lacement of a newborn infant one year of age or younger with a designated facility [hospital] shall not constitute grounds for a finding of abuse or neglect or a violation of any criminal statute for child abuse, neglect, or abandonment." The other sections of that Act contain provisions which deal with a number of additional matters including: a) the responsibilities of the Department of Health and Human Services when children are placed with designated facilities; b) the responsibilities of designated facilities; c) the responsibilities of parents; d) confidentiality of information; e) termination of parental rights; f) notice to putative fathers of infants placed with designated facilities; and g) promulgation of rules and regulations.
Section 12 of the Nebraska Children's Safe Haven Act provides that "[a] resident of the State of Nebraska who is the parent or guardian of any child who is older than one year of age and under sixteen years of age as provided in section 28-705 may seek assistance at any designated facility for such child under the Nebraska Children's Safe Haven Act." The other sections of that Act also contain provisions which deal with a number of additional matters including duties of behavioral health regions, duties of the Department of Health and Human Services, and the creation of safe haven intervention teams on a regional and statewide basis.
LB 3 repeals § 29-121 outright.
APPLICABLE LAW
This is the second opinion request which we have received regarding legislation proposed for the First Special Session and the scope of the Governor's call. In our Op. Att'y Gen. No. 08008 (November 14, 2008), we indicated that legislation proposed by Senator Pahls was likely outside the scope of the Governor's call for the special session. In an effort to expedite the preparation of this response, we will quote extensively from our Opinion No. 08008, since it pertains directly to the issues which you have presented concerning LB 3.
The special session of the Legislature has been called by the Governor using the authority vested in him by Neb. Const. art. IV, § 8. That constitutional provision states:
 The Governor may, on extraordinary occasions, convene the Legislature by proclamation, stating therein the purpose for which they are convened, and the Legislature shall enter upon no business except that for which they were called together.
 In Arrow Club, Inc. v. Nebraska Liquor Control Commission, 177 Neb. 686, 689-90, 131 N.W.2d 134, 137 (1964), the Nebraska Supreme Court stated the basic legal principles applicable under art. IV, § 8.
It is well established that the legislature while in special session can transact no business except that for which it was called together. . . . The proclamation may state the purpose for which the Legislature is convened in broad, general terms or it may limit the consideration to a specified phase of a general subject. The Legislature is free to determine in what manner the purpose shall be accomplished, but it must confine itself to the matters submitted to it by the proclamation. . . .
The guiding principle in sustaining legislation of a special session is that it be germane to, or within, the apparent scope of the subjects which have been designated as proper fields of legislation. . . .
The Legislature while in special session may enact legislation relating to, germane to, and having a natural connection with the purpose for which it was convened. . . . The purpose or subject as stated in the proclamation is to be determined by an analysis and construction of the proclamation as in the case of any written instrument. . . . The presumption is always in favor of the constitutionality of legislation, and an act should be held to be within the call if it can be done by any reasonable construction.
Applying the foregoing principles, in Arrow Club the supreme court found that legislation relating to the regulation and operation of bottle clubs was outside the scope of a special session proclamation calling for consideration of amendments to the Liquor Control Act relating to the licensing of nonprofit corporations, even though both bottle clubs and nonprofit corporation liquor licenses fell within the ambit of that act.
In Jaksha v. State, 222 Neb. 690, 696, 385 N.W.2d 922, 926 (1986), the supreme court quoted favorably from Stickler v. Higgins, 269 Ky. 260,265, 106 S.W.2d 1008, 1011 (1937), to the effect that a Kentucky constitutional provision very similar to Neb. Const. art. IV, § 8
confers upon the Governor "the power and authority to limit . . . the subjects that the Legislature might consider at [an] extraordinarily called session." The Jaksha court then went on to state:
 We conclude that Neb. Const. art. IV, § 8, as part of the power of the executive branch of government, permits the Governor to determine when an extraordinary occasion exists, necessitating convention of a special session the Nebraska Legislature. The subject matter restriction envisioned in Neb. Const. art. IV, § 8, empowers the Governor to set the boundaries of legislative action permissible at a special session of the Nebraska Legislature.
222 Neb. at 698, 385 N.W.2d at 927.
Op. Att'y Gen. No. 08008 at 2-4 (November 14, 2008).
ANALYSIS
Once again, we will quote from our Opinion No. 08008 in offering an analysis of the issues pertaining to LB 3.
As he is empowered to do, the Governor has issued a proclamation calling the Legislature into special session and set narrow boundaries on legislative action which may be taken during that session. Reading and construing the first subparagraph of the proclamation in the same manner as any other written instrument, it appears clear that the Governor has limited the special session to legislating on "a specified phase of a general subject." Arrow Club, 177 Neb. at 689,131 N.W.2d at 137.
A review of § 29-121, to which the proclamation specifically refers, shows that the general subject of that statute is (1) the exemption of persons who leave children with employees of licensed hospitals from criminal prosecution based solely upon that act and (2) the duty of hospitals to promptly notify appropriate authorities to take custody of children left with them. The Governor's proclamation, however, limits the Legislature to considering legislation which would deal with only a specified phase of this general subject — namely, the parameters of the exemption from criminal prosecution for a person leaving a child at a licensed hospital with regard to placing an upper limit on the age of a child who is abandoned in this way. Put another way, the Governor has called the Legislature for the narrow purpose of considering legislation limiting the exemption from prosecution by placing an age limit on a child who may be left at a hospital. He has not summoned the Legislature to consider and legislate with regard to other legal, medical or administrative ramifications that might flow from the relinquishment of a child at a licensed hospital or from the exemption from criminal prosecution itself.
Section 4 of your proposed bill would limit the age of a child who may be relinquished without threat of prosecution to thirty days; and such proposed limitation falls readily within the scope of the Governor's call. Bearing in mind, however, the very limited nature of the call, it appears that all the remaining provisions of the proposed bill exceed it.
Generally speaking, the proposed bill contains a definition and terminology not found in § 29-121, sets out some of the civil legal ramifications of leaving a child at a hospital, and places a number of duties and responsibilities in connection with abandonment of children at hospitals on the hospitals and the Department of Health and Human Services. None of these proposals is encompassed within the Governor's call, which is limited to consideration of a limitation on the exemption from criminal prosecution set forth in § 29-121.
* * *
It seems to us that the present situation is analogous to the situation described in Arrow Club in which the supreme court found that a Governor's call for a special legislative session to consider amendments to the Liquor Control Act relating to the licensing of nonprofit corporations did not encompass legislation relating to the regulation and operation of bottle clubs, even though both bottle clubs and nonprofit corporation liquor licenses fell within the ambit of that act. While your proposed bill's provisions do have a nexus with the general subject of the legal abandonment of children in Nebraska (just as the bottle club legislation in Arrow Club had a nexus with the general subject of the regulation of liquor), they do not have direct connection with the narrow subject of the Governor's call — limiting the exemption from criminal prosecution for abandoning a child by lowering the maximum age of covered children — (just as the bottle club legislation in Arrow Club did not have a sufficient direct connection to the narrow subject of the liquor licensing of nonprofit corporations). Accordingly, it is our view that, as it did in Arrow Club, the Nebraska Supreme Court would likely conclude that the proposed Nebraska Safe Haven Act, if enacted during the special session, is in violation of the Nebraska Constitution and void.
Op. Att'y Gen. No. 08008 at 4-5 (November 14, 2008).
LB 3 is quite similar to the legislation which was at issue in our Opinion No. 08008 in many respects. Indeed, portions of LB 3 contain language which is almost identical to Sen. Pahls' proposals. For example, Section 4 of LB 3 is much the same as Section 4 of Sen. Pahls' proposal, except that LB 3 would limit the age of a child who may be relinquished at a designated facility without threat of prosecution to one year instead of thirty days. Moreover, LB 3 contains a host of other provisions in addition to and beyond those contained in Senator Pahls' proposal which was the subject of our Opinion No. 08008. For example, LB 3 contains provisions relating to notice for putative fathers and sections creating an entirely new act, the Nebraska Children's Safe Haven Act.
We have carefully reviewed LB 3 in light of the applicable law discussed above. We believe that those portions of Section 4 of the bill which limit the age of a child who may be relinquished at a designated facility without threat of prosecution to one year are within the scope of the Governor's call. However, for the reasons set out in our Opinion No. 08008, we also believe that all other portions of the bill likely exceed the scope of the Governor's call and may not constitutionally be considered during the First Special Session.
This office has prepared numerous opinions over the years dealing with the scope of the Governor's call for special sessions of the Legislature, and we understand that there is language in some of those opinions which supports the notion that the Legislature cannot be restricted or dictated to by the Governor in his call. For example, in our Op. Att'y Gen. No. 01034 (October 31, 2001), we quoted the following language from the Arrow Club case:
 Although the subjects should be sufficient to evoke intelligent and responsive action from the legislature, it is not necessary that they include all the methods of accomplishment. The guiding principle in sustaining legislation of a special session is that it be germane to, or within, the apparent scope of the subjects which have been designated as proper fields for legislation. In construing a call the words of any portion thereof must be interpreted not only as commonly and universally understood, but also as applicable to the subject intended to be affected by legislation.
 While the legislature must confine itself to the matters submitted, it need not follow the views of the governor or legislate in any particular way. Within the special business or designated subjects submitted, the legislature cannot be restricted or dictated to by the governor. It is a free agent, and the governor, under the guise of definition, cannot direct or control its action. The Legislature while in special session may enact legislation relating to, germane to, and having a natural connection with the purpose for which it was convened. . . .
Op. Att'y Gen. No. 01034 at 3 (October 31, 2001) (Quoting Arrow Club, Inc. v. Nebraska Liquor Control Commission, 177 Neb. 686, 689-90,131 N.W.2d 134, 137 (1964)). However, in that same opinion, we noted that the court in Arrow Club "adopted a narrow view of germaneness, limiting it to `a specified phase of a general subject.'" Id. at 4 (quoting Arrow Club, 177 Neb. at 689, 131 N.W.2d at 137). We also stated that, "[i]n light of the Arrow Club decision, it appears the Nebraska Supreme Court would take a restrictive view of what legislation is considered germane to a Governor's special session call." Id. at 4.
In the present case, the Governor chose to limit the call to a "specified phase of a general subject." As we noted in Opinion No 08008, the general subject in this instance is the overall process for legal abandonment of children in Nebraska. The specified phase involves limiting the exemption from criminal prosecution for abandoning a child by lowering the maximum age of covered children. Therefore, during the First Special Session, the Legislature may lower the maximum age of covered children to whatever age it chooses, or not at all. On the other hand, the supreme court's restrictive view of what legislation is considered germane to a special session call does not allow the Legislature to consider bills which go beyond the specified phase of the Governor's call and which deal in broad terms with child abandonment, the duties of governmental and private institutions, and the duties and rights of parents. Those additional legislative issues must wait, at this point, until the Legislature is assembled in its regular session.
CONCLUSION
For the reasons discussed above, we believe that those portions of LB 3 which limit the age of a child who may be relinquished at a designated facility without threat of prosecution to one year are within the scope of the Governor's call. In our view, all other portions of that bill likely exceed the scope of that call, and may not be considered during the First Special Session.
Sincerely,
 JON BRUNING Attorney General
 Dale A. Comer Assistant Attorney General
Approved by:
 ________________________ Attorney General