REQUESTED BY: Senator Tom White
Nebraska State Legislature
The One-Hundred-First Nebraska Legislature began its First Special Session on November 4, 2009. The Governor convened that special session, under authority of art, IV, § 8 of the Nebraska Constitution, by issuance of a Proclamation dated November 2, 2009. The Governor's Proclamation called the Legislature into special session to consider and enact legislation on the following subjects:
 1. To reduce or eliminate appropriations and reappropriations approved by the 101st Nebraska Legislature;
 2. To reduce or eliminate certain transfers from the State General Fund;
 3. To authorize, increase, or make certain transfers to the State General Fund or to certain cash funds;
 4. To modify or eliminate intent language and earmarks accompanying appropriations approved by the 101st Legislature;
 5. To adopt statutory modifications necessary to reduce state aid appropriations and make formula adjustments contained in the Tax Equity and Educational Opportunities Support Act; and *Page 2 
 6. To appropriate funds for the necessary expenses of the extraordinary session herein called.
You have now introduced LB 15 in the special session, and you have requested our opinion as to whether that bill is within the scope of the Governor's call. Our response to your inquiry is set out below.
 APPLICABLE LAW
We have discussed the law relating to the scope of a Governor's call for special sessions of the Legislature frequently in previous opinions. In 2002, we stated:
 Art. IV, § 8 of the Nebraska Constitution provides as follows:
 The Governor may, on extraordinary occasions, convene the Legislature by proclamation, stating therein the purpose for which they are convened, and the Legislature shall enter upon no business except that for which they are called together.
 We have discussed this constitutional provision in numerous previous opinions, and we have noted that the final portion of art. IV, § 8 places an express limitation on the power of the Legislature to act during a special session. Op. Att'y Gen. No. 89069 (November 9, 1989). That limitation was described in Arrow Club, Inc. v. Nebraska Liquor Control Commission, 177 Neb. 686, 131 N.W.2d 134, 137 (1964):
 It is well established that the Legislature while in special session can transact no business except that for which it was called together. The proclamation may state the purpose for which the Legislature is convened in broad, general terms or it may limit the consideration to a specified phase of a general subject. The Legislature is free to determine in what manner the purpose shall be accomplished, but it must confine itself to the matters submitted to it by the proclamation.
 (Citations omitted). While the court in Arrow Club noted the express constitutional limitation on the power of the Legislature to act in a special session, it also stated:
 While the Legislature must confine itself to the matters submitted, it need not follow the views of the governor or legislate in any particular way. Within the special business or designated subjects submitted, the legislature cannot be restricted or dictated to by the governor. It is a free agent, *Page 3 
and the governor, under the guise of definition, cannot direct or control its action. The Legislature while in special session may enact legislation relating to, germane to, and having a natural connection with the purpose for which it was convened . . . . The presumption is always in favor of the constitutionality of legislation, and an act should be held to be within the call if it can be done by any reasonable construction.
 Id. at 689-90, 131 N.W.2d at 137 (Emphasis added).
Op. Att'y Gen. No. 02021 at 1-2 (August 13, 2002). More recently, in Op. Att'y Gen. No. 08008 (November 14, 2008), we also said:
 In Jaksha v. State, 222 Neb. 690, 696, 385 N.W.2d 922, 926 (1986), the supreme court quoted favorably from Stickler v. Higgins, 269 Ky. 260, 265, 106 S.W.2d 1008, 1011 (1937), to the effect that a Kentucky constitutional provision very similar to Neb. Const. art. IV, § 8 confers upon the Governor "the power and authority to limit. . . . the subjects that the Legislature might consider at [an] extraordinarily called session." The Jaksha court then went on to state:
 We conclude that Neb. Const. art. IV, § 8, as part of the power of the executive branch of government, permits the Governor to determine when an extraordinary occasion exists, necessitating convention of a special session of the Nebraska Legislature. The subject matter restriction envisioned in Neb. Const. art. IV, § 8, empowers the Governor to set the boundaries of legislative action permissible at a special session of the Nebraska Legislature.
 222 Neb. At 698, 385 N.W.2d at 927.
 It is important to note in this regard that, while the supreme court has stated that during a special session the Legislature may enact legislation "relating to, germane to, and having a natural connection with the purpose for which it was convened," Arrow Club, 177 Neb. at 690, 131 N.W.2d at 137, the court, in fact, has "adopted a narrow view of germaneness, limiting it to `a specified phase of a general subject.'" Op. Att'y Gen. No. 01034 (Oct. 31, 2001) (quoting Arrow Club, 177 Neb. at 689, 131 N.W.2d at 137). As stated in Opinion No. 01034: "In light of the Arrow Club decision, it appears the Nebraska Supreme Court would take a restrictive view of what legislation is considered germane to a Governor's special session call."
Op. Att'y Gen. No. 08008 at 3-4 (November 14, 2008). *Page 4 
 LB 15
LB 15 contains several parts. First of all, that legislation would amend various provisions of the Nebraska Property Tax Credit Act, Neb. Rev. Stat. §§ 77-4209 through 77-4212 (Cum. Supp. 2008). That Act generally provides for property tax relief for property taxes levied against all real property in the state by means of a property tax credit. The Act contemplates that General Fund monies (one hundred fifteen million dollars for tax year 2008) will be transferred to the Property Tax Credit Cash Fund for allocation to the counties to create a credit against the real property taxes which have been levied in each county. LB 15 would limit property tax relief for tax years after 2009 to property taxes levied against homesteads as they are defined in Neb. Rev. Stat. § 77-3502 (2003), i.e., certain residences, mobile homes and residential units, and it would change the form of property tax relief for those tax years from a tax credit to a homestead exemption. As a part of that process, LB 15 would replace the Property Tax Credit Act with a new Property Tax Relief Act, and the Property Tax Credit Cash Fund with a new Property Tax Relief Cash Fund. It would also establish a specific procedure for exempting a specified portion of the assessed value of all homesteads in the state from taxation.
The second portion of LB 15 would require the State Treasurer to make a number of specified transfers from the State's General Fund to the new Property Tax Relief Cash Fund. In part, those transfers would be accomplished by amending the language of existing statutes providing for transfers from the General Fund to the Property TaxCredit Cash Fund.
Finally, the last portion of LB 15 would amend 2009 Neb. Laws LB 545A, § 1 so as to reduce a number of General Fund appropriations for Program No. 158 — Education Aid. That Program is administered by the State Department of Education, and includes appropriations for a number funds and purposes including the Tax Equity and Educational Opportunities Fund (state aid to local schools), funds for early childhood education, funds for core services for educational service units, funds for adult basic education, and so forth.
 ANALYSIS
We have carefully reviewed LB 15, and we believe that some portions of it are within the proposed call. Other portions are not.
The initial portion of LB 15 would make substantive changes in the Nebraska Property Tax Credit Act. Among other things, it would limit the scope of property tax relief to homesteads instead of all real property in the State, and it would change the form of property tax relief from a property tax credit to a homestead exemption. In contrast, the Governor's call focuses on generating additional monies for the State's General Fund by reducing appropriations, eliminating transfers from the General Fund, authorizing and making transfers to the General Fund, and reducing state aid appropriations. It seems to us that your proposed substantive changes to the property *Page 5 
tax credit system have little to do with generating additional monies for the State's General Fund. As a result, those changes are not germane to and do not relate to the purpose for which the special session was convened. Moreover, those changes do not fit within any of the specific subjects set out in the Governor's Proclamation. For those reasons, we do not believe that the first portion of LB 15 is within the scope of the Governor's call.
For much the same reasons, we also do not believe that the second portion of LB 15 fits within the scope of the Governor's call. That portion of the bill would require various transfers from the General Fund into a new cash fund. While that process might appear to fit within the portion of the call which allows making transfers "to certain cash funds," the proposed transfers would occur to a cash fund created by legislation outside the call. Since the call does not allow the creation of the cash fund at issue, it seems to us that transfers to it are also outside the call. In addition, those transfers appear to be in contradiction of the general purpose of the call to gather monies into the General Fund.
The final portion of LB 15 would reduce a number of General Fund appropriations for state aid to schools. That portion of the bill appears to fall within the first and fifth subjects set out in the Governor's call. That is, they would "reduce or eliminate appropriations and reappropriations approved by the 101st Legislature," and they would effect a statutory modification "necessary to reduce [a] state aid appropriation." For those reasons, we conclude that those portions of LB 15 do fall within the scope of the Governor's call.
Sincerely,
JON BRUNING Attorney General
Dale A. Comer Assistant Attorney General
Approved:
___________________________ Attorney General *Page 1